Paul C. CAPPELLA

v.

The UNITED STATES.

No. 70–79.

United States Court of Claims.

May 28, 1980.

John Murcko, attorney of record, for plaintiff.

Ransey Guy Cole, Jr., Washington, D. C., with whom was Asst. Atty. Gen. Alice Daniel, Washington, D. C., for defendant; Le-Roy Southmayd, Jr., Washington, D. C., and Lt. Gary J. Elkins, Dept. of the Navy, of counsel.

Before FRIEDMAN, Chief Judge, and KUNZIG and BENNETT, Judges.

## ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

FRIEDMAN, Chief Judge:

This military pay case is before the court on cross-motions for summary judgment. Plaintiff sues for back pay he claims was wrongfully withheld pursuant to an administrative disciplinary proceeding his commanding officer conducted under Article 15 of the Uniform Code of Military Justice, 10 U.S.C. § 815 (1976). Briefs were filed, and we heard oral argument, at which only the defendant's counsel appeared. We hold for the defendant, and dismiss the petition.

I.

■ Plaintiff was a petty officer stationed on the U.S.S. *Blue Ridge* in Hong Kong in September 1978. The evidence before the officer conducting the Article 15 proceeding, viewed most favorably to the government (*see Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942)), was that plaintiff went with two other enlisted men to the China Fleet Club, an establishment under British military jurisdiction, where he purchased heroin from one of the others and injected it. Following an investigation, plaintiff was charged with a violation of Article 92 of the Uniform Code of Military Justice, 10 U.S.C. § 892—failure to obey a general order prohibiting naval personnel from possessing or using narcotics. 32 C.F.R. § 700.1151 (1979).

The officer who conducted the investigation recommended that plaintiff be given nonjudicial punishment under Article 15— known in the Navy as a "captain's mast"— rather than go before a court-martial. That article authorizes a commanding officer to "impose one or more" specified "disciplinary punishments for minor offenses without the intervention of a court-martial." 10 U.S.C. § 815(b). Naval personnel assigned to or embarked in a vessel must accept punishment under Article 15, and, unlike other military personnel, cannot demand trial by court-martial in lieu thereof. *Id.*; Manual for Courts-Martial para. 132 (rev. ed. 1969).

An Article 15 hearing, which complied with all the statutory and regulatory requirements for such proceedings and at which plaintiff was represented by civilian counsel, was conducted by plaintiff's commanding officer. Written statements by one of plaintiff's companions and by a Navy investigator were received. Plaintiff testified and denied the charge, and introduced conflicting testimony and documentary evidence. The captain found that plaintiff had committed the offense, and imposed as

punishment 3 days' confinement on bread and water, a reduction in grade, and forfeiture of $286 a month (one-half of plaintiff's pay) for 2 months. Plaintiff appealed to higher naval authority, which affirmed.

## II.

■ We recently described in some detail the nature of Article 15 punishment, and there is no need to repeat that discussion here. *Dumas v. United States*, 620 F.2d 247 at 251 (Ct.Cl.1980). As the Supreme Court has stated, "Article 15 punishment, conducted personally by the accused's commanding officer, is an administrative method of dealing with the most minor offenses." *Middendorf v. Henry*, 425 U.S. 25, 31–32, 96 S.Ct. 1281, 1286, 47 L.Ed.2d 556 (1976).

Plaintiff contends that the Article 15 tribunal had no jurisdiction over his offense for two reasons.

■ A. Plaintiff asserts that jurisdiction was lacking because his offense was committed while off duty and in an area over which American military authorities had no control. Although there is no court-martial jurisdiction over nonservice-connected offenses committed off base by off-duty military personnel in the United States (*O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969)), the rule is otherwise for such offenses committed overseas (*e. g. Gallagher v. United States*, 191 Ct.Cl. 546, 423 F.2d 1371, *cert. denied*, 400 U.S. 849, 91 S.Ct. 58, 27 L.Ed.2d 86 (1970); *Williams v. Froehlke*, 490 F.2d 998 (2d Cir. 1974)). The reason for the distinction is that although civilian tribunals are available for the trial of servicemen charged with such offenses in the United States, they are not available overseas. There, if the military tribunals had no jurisdiction, the alternative would be criminal prosecution in the courts of foreign countries. Moreover, it is far from clear that the rationale of *O'Callahan* extends to nonjudicial punishment for minor offenses under Article 15. Accordingly, an Article 15 tribunal may have jurisdiction to punish such offenses committed under circumstances where a court-martial could not try them.

■ B. Plaintiff points out that Article 15 authorizes the imposition of nonjudicial punishment only for "minor" offenses, and he contends that the offense he was found to have committed was not minor. The argument is that the maximum table of punishments in the Manual for Courts-Martial specifies a maximum punishment under Article 92 for "violat[ing] or fail[ing] to obey any lawful general order or regulation"—the offense that plaintiff was found to have committed—of dishonorable discharge and confinement at hard labor for up to 2 years, and that only a general court-martial could impose that punishment. Plaintiff points to the statement in paragraph 128 of the Manual that "the term 'minor' . . . ordinarily does not include misconduct of a kind which, if tried by general court-martial, could be punished by dishonorable discharge or confinement for more than one year." He asserts that *Hagarty v. United States*, 196 Ct.Cl. 66, 449 F.2d 352 (1971), compels this conclusion.

■ We do not read paragraph 128 of the Manual or *Hagarty* as barring the utilization of Article 15 punishment for any conduct that, if tried by court-martial, could result in the punishment specified in that section. To the contrary, we think that the commanding officer has broad discretion to determine whether a particular alleged offense is sufficiently serious to warrant court-martial rather than nonjudicial punishment under Article 15.

1. The Manual itself so indicates:

The nature of an offense, and the circumstances surrounding its commission, are among the factors which must be considered in determining whether or not it is minor in nature. [Paragraph 128(b)].

When a minor offense has been committed and nonpunitive measures are considered insufficient, authority under Article 15 should ordinarily be used unless it is clear that only trial by court-martial will meet the needs of justice and discipline. [Paragraph 129(a)].

Moreover, the very provision of the Manual upon which the plaintiff relies qualifies the limitation of minor offenses to those not punishable by a dishonorable discharge or confinement for more than one year with the word "ordinarily."

The provision of Article 92 that plaintiff violated makes it an offense to violate or fail to obey "any lawful general order or regulation." The general order that plaintiff violated prohibits, except for authorized medicinal purposes, the possession, use, sale or other transfer of "marijuana, narcotic substances or other controlled substances" by naval personnel.

If a seaman were found in possession of a small amount of marijuana, it is difficult to believe that the Navy could discipline him only by bringing him before a court-martial, and not by imposing the appropriate nonjudicial punishment under Article 15. Yet that is the consequence of plaintiff's contention that Article 15 punishment is here barred because the substantial maximum punishment that a court-martial could impose for violation of Article 92 precludes his offense from being "minor." The logic of plaintiff's argument is further discredited by consideration of other possible offenses under Article 92. There are a number of other general naval orders and regulations, the violation of which frequently would be dealt with more appropriately by Article 15 punishment than by court-martial. *See, e. g.,* the regulations governing the issue or loan of public property to non-federal entities (32 C.F.R. § 700.1144), the possession or use of alcoholic beverages aboard ship (*id.* § 700.1150), and the endorsement of commercial products or processes (*id.* § 700.1161). We decline to interpret the Manual to restrict the authority of the commanding officer to impose administrative punishment for such offenses, the impact of which upon military order and discipline are not so serious as to necessitate a court-martial.

The military courts have recognized that the decision whether to proceed under Article 15 must be based on all the facts and circumstances surrounding the crime and the accused. *United States v. Rivera,* 45 C.M.R. 582, 584 n.3 (NCMR 1972); *United States v. Harding,* 11 C.M.A. 674, 677, 29 C.M.R. 490, 492–93 (1960). Indeed, in *Rivera* the court ruled that the decision to proceed under Article 15 was "legally permissible" in view "of the nature of the offense," even though the offense was punishable by confinement for up to 10 years.

The plaintiff has not shown that the Navy abused its discretion in treating his offense as "minor" and punishing it under Article 15 rather than court-martialing him for it.

2. *Hagarty* does not control this case or require a different result. That case involved a captain's mast that the court described as an "outrageous spectacle" in which the captain engaged in "angry, profane and abusive conduct toward the accused" (*Hagarty, supra,* 196 Ct.Cl. at 81, 449 F.2d at 360), and at which four of the procedural requirements of the Manual governing captain's masts were violated. The court held that the statement of the charges and the entire proceeding before the mast "makes it clear that plaintiff was actually being tried for 'Frauds against the United States,' . . . and not for . . a 'minor offense' under Art. 15." *Id.* at 76, 449 F.2d at 357.

In the present case, in contrast, the offense the plaintiff was found to have committed was a minor incident, charged and dealt with as such, and not the kind of serious conduct for which trial by court-martial was deemed appropriate. The mast was conducted in full compliance with the procedures specified in the Manual. None of the serious flaws in the imposition of nonjudicial punishment that the court found in *Hagarty* was present here.

III.

Plaintiff challenges the Article 15 proceeding on various procedural grounds. He contends that his commanding officer failed to follow regulations in conducting the proceeding by (1) failing to provide him with a full copy of the report of investigation, and (2) not allowing him to cross-examine the

**980**

witnesses against him. Manual of the Judge Advocate General of the Navy, Regulations Supplementing the Manual for Courts-Martial § 0101d(1)(d)(iv)–(vi) (1978). He also claims the proceeding violated his sixth amendment right to confront the witnesses against him.

 A. The last claim requires little discussion. The sixth amendment guarantee of an accused's right to confront the witnesses against him, like his right to the assistance of counsel and other rights there provided, applies only in "criminal prosecutions." *Middendorf v. Henry* held that the sixth amendment's right to counsel did not apply to a summary court-martial because that proceeding is not a "criminal prosecution" under the sixth amendment. *Middendorf, supra*, 425 U.S. at 34, 96 S.Ct. at 1287. *A fortiori* the sixth amendment does not apply to an Article 15 proceeding for the imposition of nonjudicial punishment, and plaintiff had no sixth amendment right to confront the adverse witnesses. *Dumas, supra*, at 253.

 B. Plaintiff's contention that the Article 15 proceeding was conducted in violation of Navy regulations is no more persuasive.

Section 0101d(1)(d)(iv)–(vi) of the Navy regulations states:

(d) [at the captain's mast the accused] will be accorded the following rights:

. . . . .

(iv) To be present during the presentation of all information against him, either by testimony of a witness in person or by the receipt of his written statement(s), copies of the latter being furnished to the accused.

(v) To have available for his inspection all items of information in the nature of physical or documentary evidence to be considered by the officer conducting the hearing.

(vi) To have full opportunity to present any matter in mitigation, extenuation, or defense of the offense(s) of which he is suspected.

Plaintiff argues that the Navy's failure to furnish him with a complete report of the investigation that led to the charges against him violated subparagraphs iv and v of the regulation. Those provisions, however, merely require that the accused be furnished with copies of written statements against him that are received into evidence at the proceeding, and be given the opportunity to inspect physical or documentary evidence that the officer conducting the proceeding will consider. Plaintiff acknowledges that he received eight pages of the 31-page report of investigation, and he makes no claim that any other portion of the report related to his conduct. There is no indication that in deciding the case the captain considered any information not made available to the plaintiff. Subparagraphs iv and v require no more; they do not entitle an accused to see portions of the report of investigation that do not relate to him.

Plaintiff also contends that his inability to cross-examine the witnesses against him violated subparagraph vi of the regulation. That provision, however, merely guaranteed him "full opportunity to present any matter in mitigation, extenuation, or defense of the offense(s) of which he is suspected." Plaintiff was given and took full advantage of that opportunity. Plaintiff himself testified, and his attorney presented testimony from several witnesses and introduced documentary evidence. The Article 15 hearing is an informal administrative proceeding for the imposition of minor punishment for minor offenses. It would be inconsistent with the basic concept of that proceeding to introduce into it the kind of formalism that adversarial cross-examination of witnesses would produce.

CONCLUSION

Plaintiff's motion for summary judgment is denied, defendant's motion for summary judgment is granted, and the petition is dismissed.