**Major General (Ret.) James F. COCHRAN, III**

v.

**The UNITED STATES.**

No. 690–81C.

United States Claims Court.

March 16, 1983.

Cochran), requisitioned a military aircraft for a round trip flight for himself and his wife from Fort Stewart, Georgia (at which he was then commandant), to an airport near the United States Military Academy at West Point, New York, where they attended graduation ceremonies for their son.

In March 1981, MG Cochran gave his personal property, a boat stove to a Mr. Watford, a civilian government employee, under his command at Fort Stewart, for conversion from alcohol to propane use and for repair. Watford purchased $50 in repair parts out of his own funds, but was unsuccessful in his efforts to repair the stove. He then took the stove to the refrigerating, heating and plumbing shop at Fort Stewart, where the foreman and assistant foreman respectively performed the appropriate major repairs and adjustments to it using government purchased supplies.

After receiving information as to these transactions, on May 28, 1981, the Army Vice Chief of Staff directed the Inspector General to inquire into allegations that MG Cochran had committed improprieties. Thereafter, on June 20, 1981, a colonel from the office of the Inspector General briefed General Robert M. Shoemaker, Commander, United States Army Forces Command, Fort McPherson, Georgia, on the results of the Inspector General's investigation.

Charles M. Jones, Hinesville, Ga., for plaintiff; Jeffrey L. Arnold and Jones, Osteen & Jones, Hinesville, Ga., of counsel.

Michael D. Morin, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant; Major Chris G. Wittmayer, Washington, D.C., of counsel.

On June 23, 1981, General Shoemaker initiated proceedings against MG Cochran by sending him a notice stating the following:

1. I am considering whether you should be punished under Article 15, UCMJ[1], for the following misconduct:

a. You did, at Fort Stewart, Georgia, on or about 25 May 1981, wrongfully appropriate a U–21 aircraft, property of the United States, by directing that it be flown to Newburgh, New York, and return for your own personal benefit, in violation of Article 121, UCMJ.

b. You did, at Fort Stewart, Georgia, in or about March 1981, violate a lawful

## OPINION

### ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MILLER, Judge:

In May 1981, the plaintiff, then Army Major General James F. Cochran, III (MG

---

1. Uniform Code of Military Justice.

general regulation, to wit: para 2–4, AR 600–50, dated 20 October 1977, by causing a diversion of Government facilities, property, and manpower for the repair of a privately owned stove for your boat, in violation of Article 92(1), UCMJ.

2. You have several rights under this Article 15 procedure. First, I want you to understand that I have not yet made a decision whether or not you will be punished, and I will not impose any punishment unless I am convinced beyond a reasonable doubt that you committed the offense. You may ordinarily have a public hearing before me. You may bring a person to speak on your behalf. You may present witnesses and other evidence to show why you shouldn't be punished at all (*matters in defense*) or why punishment should be very light (*matters in extenuation and mitigation*). I shall consider everything you present before deciding whether I will impose punishment or the type and amount of punishment I will impose. You are not required to make any statements at all, but if you do, they may be used against you in this Article 15. If you do not want me to dispose of this report of misconduct under Article 15, you have the right to demand trial by court-martial instead.

In deciding what you want to do you have the right to consult with a lawyer located at US Army Trial Defense Service, Bldg 375, Fort Stewart, Georgia You now have 72 hours to decide what you want to do. [Emphasis in original; footnotes omitted.]

MG Cochran responded to the notice on July 1, 1981, signifying thereon that:

Trial by Court-Martial is *not* demanded and in the Article 15 proceedings:

a. An open hearing * * * is not requested.

b. A person to speak on my behalf * * * will not accompany me.

c. Matters in defense and/or extenuation * * * will be presented in person.

On July 2, 1981, General Shoemaker held a hearing pursuant to Article 15, to consider the matters raised by MG Cochran in defense and in extenuation and mitigation of the charges against him. In addition to plaintiff and General Shoemaker, plaintiff's military defense counsel and General Shoemaker's staff judge advocate were present at such hearing. Due to the informal nature of the proceedings no transcript was required to be made (AR 27–10, para. 3–15a[2]), and none was made.

General Shoemaker's decision, entered July 6, 1981, was as follows:

I have considered all matters presented in defense and/or extenuation and mitigation. The following punishments are imposed:

Forfeiture of $2,000; and to receive a written reprimand (attached).

The reprimand stated:

1. You are hereby reprimanded.

2. Your actions in diverting Government material, facilities and manpower for your personal use and benefit constitute a gross abuse of the important position of command entrusted to you. A senior officer of your grade and position should be looked to by his subordinates as as example of integrity and dedication in the honorable profession in which we serve. By your disregard of law and regulations you have disgraced the officer corps of the Army, and have demonstrated a lack of leadership.

3. This reprimand is imposed as punishment under Article 15, Uniform Code of Military Justice.

On August 5, 1981, MG Cochran appealed such punishment to the next superior authority.

On August 13, 1981, General Shoemaker forwarded the appeal with an accompanying memorandum to Major General Hugh J. Clausen (MG Clausen), the Judge Advocate General of the Department of the Army, to whom the appeal had been assigned. In his memorandum General Shoemaker summarized the record in the Article 15 proceedings and stated his conclusion as follows:

2. References hereinafter to AR are to the Army Regulations dated August 15, 1980.

3. Although the DA[3] Inspector General investigation was not available, I had received a comprehensive briefing concerning all relevant testimony on five "founded" allegations by the investigating officer, COL William F. Muhlenfeld. I had available and reviewed the four written witness statements pertaining to the two charged offenses (Incl 3). These statements were provided to the appellant and his military defense counsel prior to the hearing.

4. As to the misuse of aircraft, MG Cochran testified before me that his actions were admittedly wrong, but there were extenuating and mitigating circumstances, which he presented to me in detail. I am convinced, however, that his primary purpose in traveling to the United States Military Academy was personal, not official. In this connection, attention is invited to MG Cochran's testimony before the IG, at pages 17 and 20. This unedited transcript (Incl 4), although not available at the time I imposed punishment, has now been considered because of MG Cochran's allegations against the IG, and because of his statements now regarding his trip to West Point.

5. Concerning the offense of causing government repair of the boat stove, MG Cochran's actions speak for themselves. In my opinion, he knew the extent of work required, knew Mr. Watford's methods, and was well aware that his position as Commanding General of the Division and Fort Stewart would cause the stove to be converted on Government time and at Government expense. My view now is the same as I stated to him at the conclusion of the hearing, that is, he not only created the appearance of wrongdoing, but he actually knew he was doing wrong. There is no evidence of an offer to reimburse Mr. Watford for his time or his stated expenditures. I am informed that Mr. Watford did not testify at the IG inquiry because of his status in an ongoing FBI investigation into other matters. I am satisfied, however, that sufficient information was presented to me for an informed and fair decision.

6. The punishment should stand. MG Cochran, under all facts and circumstances, misused his position for personal gain.

MG Clausen's decision on the appeal, issued August 31, 1981, stated:

2. After carefully reviewing the evidence, which includes written matters supplied by MG Cochran's attorney that were not available when you imposed punishment, your findings were affirmed except that I reduced the finding of guilty of Article 92 to a lesser offense of negligent dereliction of duty. This action is reflected on the attached DA Form 2627, a copy of which should be provided to MG Cochran.

3. I have determined the punishment to be just and appropriate for the affirmed offenses. Accordingly, the punishment imposed on MG Cochran has not been reduced.

And on the attached DA Form 2627 he stated:

The findings of guilty of the Article 121, UCMJ, offense (wrongful appropriation) and only so much of the Article 92, UCMJ, offense as finds petitioner guilty of the lesser offense of dereliction of duty, through negligence, in violation of Article 92, UCMJ, by wrongfully accepting a gift from a subordinate DAC and by wrongfully creating the appearance of using public office for private gain, in contravention of paragraphs 1–3e and 2–3, Army Regulation 600–50, said conduct violating a duty created by the cited Regulation, is affirmed. The punishment is approved.

In this suit plaintiff seeks to have the Article 15 proceedings and findings and sentence declared a nullity and the $2,000 forfeiture in military pay returned to him. Defendant moves for summary judgment.

Before taking up the various grounds for relief asserted by plaintiff it is necessary to consider the nature of the Article 15 proceedings.

---

3. DA refers to the Department of the Army.

■ The Uniform Code of Military Justice prescribes four methods for dealing with offenses charged against members of the Armed Forces: three kinds of courts-martial, general, special and summary, jurisdiction of which varies with the seriousness of the allowable penalty (Arts. 16–20 of the Code (10 U.S.C. §§ 816–20)); and "Commanding Officer's Non-judicial Punishment" (Art. 15 (10 U.S.C. § 815)).

■ General and special courts-martial are full judicial proceedings with panels of three to six judges, one of whom must be a lawyer, counsel for both sides and various basic protective and procedural rights similar to those incident to judicial trials. (Arts. 26 et seq. (10 U.S.C. § 826 et seq.).) A summary court-martial consisting of one commissioned officer has jurisdiction over offenses having specified relatively lesser penalties and also requires a judicial trial, but may not be ordered over the objection of the accused. (Arts. 16, 20 (10 U.S.C. §§ 816, 820).)

■ As reflected in its title Article 15 punishment is non-judicial. Under such regulations as the President and Secretary of the Department may prescribe, unless the accused member of the Armed Forces demands trial by court-martial, Article 15 empowers a commanding officer to "impose one or more" specified "disciplinary punishments for minor offenses without the intervention of a court-martial." The Army regulations stated that "The Article 15 proceedings before the commander is not an adversary proceeding." (AR 27–10, para. 3–14b.) In *Middendorf v. Henry*, 425 U.S. 25, 31–32, 96 S.Ct. 1281, 1285–86, 47 L.Ed.2d 556 (1976), the Supreme Court described "Article 15 punishment, conducted personally by the accused's commanding officer, [as] an administrative method of dealing with the most minor offenses."

In *Dumas v. United States*, 223 Ct.Cl. 465, 472–74, 620 F.2d 247, 251–52 (1980), the Court of Claims had occasion to review in considerable detail the nature and incidents of Article 15 punishment proceedings. Although to some degree the court relied on Air Force regulations, the Army regulations are similar, and the court's description of the proceedings are equally pertinent here:

Article 15 nonjudicial punishment * * * is the least formalized method of discipline, conducted personally by the accused's commanding officer. The legislative history accompanying 10 U.S.C. § 815 states "Article 15 * * * provides a means whereby military commanders may impose nonjudicial punishment for minor infractions of discipline." * * * The legislative history states definitely that Article 15 nonjudicial punishment is noncriminal in character and "in this sense has no connection with the military court-martial system." [Citation omitted.]

Under Article 15 the accused is given specific notice of the offense charged and asked to elect for either nonjudicial punishment by his commanding officer or demand trial by court-martial. Election of nonjudicial punishment constitutes a waiver of the right to demand trial. *Manual for Courts-Martial * * * ¶ 133* (rev. ed. 1969). But failure to demand trial by court-martial, however, "is not a plea of guilty to the described offense(s). Accordingly, commanders must carefully consider all matters submitted in defense." Air Force Regulation (AFR) 111–9(6)(h) (July 24, 1974).

If nonjudicial punishment is elected the accused is given a reasonable time for preparation and then appears before his commanding officer to offer matters in defense or mitigation of the offense charged. The accused may call witnesses who are reasonably available locally and who can be presented without legal process. AFR 111–9(6)(e). There is no requirement at the accused's appearance for the commander to *present* evidence to establish the commission of the offense or offenses. *Id.* No formal evidentiary standards apply to Article 15 proceedings, however, under Air Force regulations, "punishment should be imposed only when the commander is convinced by reliable evidence that the offender committed the offense." AFR 111–9(4)(a). [Emphasis in original.]

If, after the accused's presentation, the commander is convinced the offender committed the offense, nonjudicial punishment may be imposed. The punishments a commanding officer can award are strictly limited and significantly milder than those authorized under courts-martial. * * * The accused has specific rights of appeal of which he must be notified.

*See also Cappella v. United States,* 224 Ct.Cl. 162, 624 F.2d 976 (1980).

▮ Plaintiff argues first that he is entitled to a *de novo* hearing in this court on his guilt or innocence of the charges against him. The obvious response to this contention is that both the statute and the regulations gave plaintiff an opportunity for a trial by court-martial with all of the protective incidents to such a trial, and plaintiff waived it. Article 15 provides that nonjudicial punishment may not be imposed by the commanding officer if the accused demands a trial. Section 133a of the *Manual for Courts-Martial* (1969 Rev. ed.) (MCM), provides that "An election to accept nonjudicial punishment constitutes a waiver of the right to demand trial." And in his consent to the nonjudicial punishment plaintiff expressly waived trial by court-martial. It would hardly be reasonable to impute to Congress in the enactment of the Uniform Code of Military Justice the intent to allow an accused to waive trial by a court in favor of minor punishment by his commanding officer and then after the punishment is imposed to repudiate his election and obtain a *de novo* trial by another court.

Furthermore, Article 15 deals with a range and variety of punishments to be imposed *by the commanding officer.* The legislative committee report on Article 15 (10 U.S.C. § 815) also emphasizes that Article 15 punishment is "nonjudicial punishment for minor infractions of discipline," to be imposed by "military commanders * * * as an essential part of their responsibilities to preserve discipline and maintain an effective armed force." (S.Rep. No. 1911, 87th Cong. 2d Sess. 2–4, *reprinted in* 1962 U.S.Code Cong. & Admin.News 2379, 2380–81.) There is nothing in the training or expertise of the members of this court which qualifies them to substitute their judgment for that of the commanding officer of plaintiff's military unit in choosing which of the range of permissible punishments is most suitable for maintaining the discipline, morale and effectiveness of the organization; and a *de novo* judicial trial by this court would fly in the face of the pertinent legislative intent.

Plaintiff cites *Hagarty v. United States,* 196 Ct.Cl. 66, 449 F.2d 352 (1971) as a precedent for a de novo trial of an accused punished under Article 15. But in that case the accused naval enlisted man was not given the option of a judicial trial before punishment was imposed by the captain of his vessel.[4] Moreover, the court proceedings were not on the merits of the charges against the accused but on whether the conduct of the Article 15 proceedings was compatible with the statute and regulations. The court in that case described the captain's mast proceeding in which he imposed punishment on the accused as an "outrageous spectacle" in which the captain engaged in "angry, profane and abusive conduct toward the accused," the accused was never given "full opportunity * * * to present any matters in mitigation, extenuation, or defense of the suspected offenses" as required by MCM section 133(b), and there were other important disregards of the requirements of Article 15 and the applicable regulations. *Hagarty, supra,* 196 Ct.Cl. at 81, 84, 449 F.2d at 360, 361. *See also Cappella v. United States, supra,* 224 Ct.Cl. at 168, 624 F.2d at 979.

▮ In a suit seeking to overturn nonjudicial punishment imposed under Article 15, this court's jurisdiction is limited to cases

---

4. Article 15 provides that "except in the case of a member attached to or embarked in a vessel, punishment may not be imposed upon any member of the armed forces under this article if the member has, before the imposition of such punishment, demanded trial by court-martial in lieu of such punishment." [Underscoring supplied.] (10 U.S.C. § 815(a).) *See also* MCM section 132.

involving money claims founded upon allegations of lack of compliance with the requirements of the statute, the controlling regulations and the Constitution. *Hagarty v. United States, supra,* 196 Ct.Cl. at 85, 449 F.2d at 362; *Dumas v. United States, supra,* 223 Ct.Cl. at 471, 620 F.2d at 250. We turn now to plaintiff's contentions that there was such lack of compliance.

▆ Plaintiff contends that the offenses with which he was charged were not minor offenses, and hence Article 15 administrative punishment does not bar him from demanding a judicial trial in which the burden of proof would be on the government. However, nothing in the language of Article 15 states that it is inapplicable merely because the offense could have warranted more severe punishment and a recommendation for court-martial. In *Cappella v. United States, supra,* 224 Ct.Cl. at 166, 624 F.2d at 978, the Court of Claims ruled that "the commanding officer has broad discretion to determine whether a particular alleged offense is sufficiently serious to warrant court-martial rather than nonjudicial punishment under Article 15." Plaintiff has not shown that the commanding officer abused his discretion in offering plaintiff the lesser Article 15 punishment. If plaintiff believed that the nature of the Article 15 proceedings placed him in an unfavorable posture, he had a ready remedy to avoid it. He could have asked for a court-martial and thus forced General Shoemaker either to assume the burden of proof or to drop the charges.

Plaintiff alleges that General Shoemaker failed to make the preliminary inquiry mandated by MCM section 32(b) because he "adopted as his own the briefing given him by members outside his command from the Inspector General's investigation from Washington."

MCM section 32 provides:

32. ACTION BY COMMANDER EXERCISING IMMEDIATE JURISDICTION UNDER ARTICLE 15.

 \* \* \* \* \* \*

b. Preliminary inquiry. He will make, or cause to be made, a preliminary inquiry into the charges or the suspected offenses sufficient to enable him to make an intelligent disposition of them. This inquiry is usually informal. It may be conducted by the commander or by a member of his command. It may consist only of an examination of the charges and the summary of expected evidence which accompanies them. In other cases it may involve a more extensive investigation and the collection of evidence. \* \* It is not the function of the person making the inquiry merely to prepare a case against the accused. He should collect and examine all evidence that is essential to a determination of the guilt or innocence of the accused, as well as evidence in mitigation or extenuation.

This section is somewhat modified by MCM section 133, which provides:

133. PROCEDURE; RECORDS OF PUNISHMENT.

a. <u>Procedure for Army and Air Force</u>. The commanding officer, <u>upon ascertaining to his satisfaction after any inquiry he considers necessary</u> that an offense punishable under Article 15 has been committed by a member of his command, will, if he determines to exercise his Article 15 authority, so notify the member of the nature of the alleged misconduct by a concise statement of the offense in such terms that a specific violation of the code is clearly stated and inform him that he intends to impose punishment under Article 15 for the misconduct \* \* \*. [Underscoring supplied.]

▆ The language is clear that the preliminary inquiry need not be made personally by the commander. It is sufficient if he "cause[s] it to be made." The inquiry need only be "sufficient to enable him to make an intelligent disposition" of the charges. It may be "informal." The commanding officer's inquiry "may consist only of an examination of the charges and the summary of expected evidence which accompanies them." More important, the sections do not contemplate an objective standard for the sufficiency of the preliminary inquiry but

only that the commanding officer ascertain "to his satisfaction after any inquiry he considers necessary" that the offense has been committed. It is apparent that the regulations do not place any particular importance on who conducts the preliminary investigation as long as the accused's commanding officer examines the charges and summary of the evidence and exercises his own judgment on whether or not there is a basis for initiating the proceeding.

Accordingly, there was no violation of the regulations in General Shoemaker's reliance for his preliminary investigation upon the oral report made to him by Colonel William F. Muhlenfeld of the Office of the Inspector General as to the results of his investigation, accompanied by the statements of four witnesses procured by the latter.

Plaintiff would apparently convert the informal inquiry into the equivalent of a grand jury investigation prior to a criminal indictment. This clearly is incompatible with the nature of the nonjudicial proceeding contemplated by the statute.

Next plaintiff asserts that in the course of the Inspector General's investigation he gave the investigators information that Mrs. Cochran suffered physical and mental ill health, and that Dr. Alcide Lanoue (plaintiff's military physician), Captain Shelby T. Clark (plaintiff's military aid) and Chaplain Wade could verify this, and thereby substantiate plaintiff's statement that he only took her along on the air flight to West Point because she was unable to tolerate the long automobile trip from Fort Stewart, which he had originally planned for her; but the investigators never interviewed such potential witnesses who might have substantiated his defense or offered evidence in mitigation or extenuation of his offense. Plaintiff contends that this failure to interview such witnesses was in violation of the requirements of MCM section 32(b) that the person making the preliminary inquiry not limit himself to preparing a case against the accused but "should collect and examine all evidence that is essential to a determination of the guilt or innocence of the accused, as well as evidence in mitigation or extenuation."

In the light of the legislative intent that Article 15 be a device for the simplified nonjudicial administration of punishment by a commanding officer for a minor offense by a subordinate, there is no basis for imputing to Congress the intent that an accused, after he has been found guilty of the charge and his punishment has been affirmed by higher military authority, have the right to independent judicial reexamination of the merits of the finding. It is even more difficult logically to impute to Congress the intent that under such circumstances the accused have the right to review by a civilian court of the adequacy and scope of the preliminary inquiry. In any event, examination of the record produced by plaintiff indicates that he has failed to demonstrate that the investigation was inadequate for its purpose.

To show that plaintiff told the investigators about his wife's mental condition as a reason for taking her along without authorization on the government aircraft, plaintiff has included in his opposition to defendant's motion a copy of portions of the transcript of his interview with the Inspector General's investigators. However, it does not show that at that time plaintiff furnished the names of corroborative witnesses. In any event, there was no need to obtain corroboration, for, assuming the truth of plaintiff's allegations, they would not establish an adequate defense warranting not proceeding with the Article 15 notification because—

(a) In the same interview plaintiff conceded that the purpose of the trip from Fort Stewart to West Point in government aircraft by both husband and wife was for both of them to attend their son's graduation and that he had no other purpose for his own trip;

(b) There was no allegation that the wife's trip was a medical emergency; and

(c) No explanation was offered why both the plaintiff and his wife could not have

travelled together to West Point by commercial airline at their own expense.[5]

■ Next plaintiff assigns as error that his commanding officer failed to call three witnesses who could have testified as to Mrs. Cochran's mental and physical condition, as well as Mr. R.L. Watford, the civilian employee who had the plaintiff's stove repaired by the Fort Stewart Army personnel. But once plaintiff waived trial, the burden was on him to produce the evidence in mitigation or extenuation of the charges. AR 27–10 para. 3–12a provides that the accused member of the Armed Forces has the "right fully to present his case in the presence of the officer who intends to impose the punishment * * * " including "the right to call witnesses [and] present evidence." Plaintiff advances no reason why he could not have procured the voluntary attendance of such witnesses at the hearing

on his own behalf. He does not contend that they were hostile or would have refused to appear. He simply chose not to call them.[6]

■ Plaintiff contends that General Shoemaker committed reversible error by denying plaintiff access to the details of the preliminary investigation. But the documents produced by defendant in support of its motion for summary judgment, the accuracy of which are not disputed by plaintiff, show that at the times when he initiated and conducted the Article 15 proceeding, the Inspector General's report had not yet been prepared, and General Shoemaker had relied on the oral comprehensive briefing by the Inspector General's investigator, plus four written witness' statements which he had provided to plaintiff and his counsel. (See pp. 762–763 *supra.*) More important, there was no violation of any regulations in

5. Plaintiff contended that the transcript of his interview could not be availed by the government because the investigators advised him before he testified that his testimony could not be used against him. Actually, the precise statements by the interviewer were:

> Our mission is to advise the Vice Chief of Staff as to our findings so that he can make a determination about what further action, if any, to take. * * * The testimony that you give us this morning is not admissible in any subsequent proceeding if there should be one. Other evidence that we get in the course of our investigation is admissible. * * * But testimony is not admissible.

and

> [t]he material that we collect here is not admissible in any subsequent proceeding if there is one. * * *
> A. In other words, any subsequent proceeding would be de novo?
> Q. That's right.

The interviewer's statements are not necessarily inconsistent with use of the plaintiff's admissions as part of the preliminary investigation. He did state that the interview was to enable a determination as to what further action to take. What other purpose could plaintiff have understood as the reason for conducting the interview at all? But be that as it may, plaintiff's contention here that in the course of the interview he gave to the interviewers investigative leads which they failed to follow up without justification constitutes a waiver of plaintiff's privilege that his testimony not be used against him. It would be unfair to allow plaintiff to use in support of his argument as to the impropriety of the preliminary inquiry only

a part of the available record of that inquiry if it resulted in a distortion of the entire evidence on the subject.

If the entire transcript is excluded, plaintiff has failed to prove his contention as to the insufficiency of the preliminary inquiry.

6. Plaintiff also argues that had he requested the commanding officer to call the witnesses, the latter would have declined because AR 27–10 para. 3–14b provides that compliance with such request "shall be restricted to those witnesses who are reasonably available as determined within the discretion of the commander imposing Article 15 punishment," and that in determining whether a witness is "reasonably available" the commander imposing Article 15 punishment shall take into consideration that no witness fees will be paid and that the phrase "will ordinarily include those military personnel present for duty at the installation concerned, or those available without the expenditure of travel funds to obtain their presence, and whose attendance will not materially delay the disposition of the proceedings." Plaintiff argues that since the hearing was held at Fort McPherson, Atlanta, Georgia, approximately 250 miles from Fort Stewart, where the four witnesses were located, General Shoemaker would not have called them. However, all four were at "the installation concerned" and hence the commanding general could have exercised his discretion in favor of calling them; but the simple fact is that plaintiff does not allege and the record does not reflect that prior to the hearing he requested that they be called.

failing to furnish what plaintiff contends for, since all that the regulations require is that the commanding officer "notify the member of the nature of the alleged misconduct by a concise statement of the offense in such terms that a specific violation of the code is clearly stated", and that "Any written statements or other documentary evidence pertaining to the case which have been considered by the officer authorized to impose the punishment shall be attached to the file." This was complied with fully.

■ Plaintiff contends that it was important that he have been informed of the details of the Inspector General's investigation because in his report on the proceedings in connection with plaintiff's appeal General Shoemaker stated that the Inspector General's investigating officer had briefed him on all relevant testimony on five "founded" allegations against plaintiff, and plaintiff had no knowledge of the five allegations which may have prejudiced General Shoemaker in the punishment he imposed for the two offenses. The obvious response is that General Shoemaker was not influenced by the other allegations because thereafter he decided to initiate proceedings against plaintiff only with respect to the two charges. Finally, the Inspector General's report was furnished to plaintiff on November 20, 1981. If anything in that report showed a violation of plaintiff's constitutional rights or the applicable statute or regulations, plaintiff had ample opportunity to bring it to this court's attention.

■ Plaintiff further contends that General Shoemaker had decided what punishment he would impose without awaiting plaintiff's hearing, because he read from a yellow sheet of paper previously written out. However, Colonel Patrick A. Tocher, General Shoemaker's staff judge advocate, certified that he had furnished the yellow sheet of paper with a *range* of permissible punishments and a blank space for the one to be chosen, and General Shoemaker at the time he announced the punishment merely filled in the blank space with his choice. Plaintiff has not offered any contrary evidence.

■ Plaintiff faults General Shoemaker for having attempted to prejudice plaintiff's appeal by writing a memorandum to the appellate officer setting forth his views on the appeal. However, this is not contrary to the regulations, since AR 27–10 para. 3–24 provides that "The office forwarding the appeal may attach thereto any matter in rebuttal of assertions made by the appellant."

■ Next plaintiff contends that the affirmance of General Shoemaker's punishment on appeal was faulty because contrary to AR 27–10 para. 3–2b(2). He asserts that that regulation requires referral of an appeal from Article 15 punishment to an officer senior in rank both to the person punished and to the officer imposing the punishment but that MG Hugh J. Clausen, the Judge Advocate General, who affirmed plaintiff's punishment, was junior in rank to both plaintiff and General Shoemaker. Plaintiff is mistaken. AR 27–10, para. 3–2 deals with delegations of Article 15 authority by commanding officers to their own subordinates. The regulation applicable here is AR 27–10, para. 3–22, which provides that "The Secretary of the Army has designated The Judge Advocate General the authority next superior for the purpose of acting on appeals from punishments imposed under Article 15 UCMJ, when there is no intermediate superior authority reasonably available to take this action."

Plaintiff also makes a number of other arguments which in substance assert that General Shoemaker's decision was wrong: namely, that General Shoemaker was predisposed against plaintiff; that plaintiff's trip to West Point by government aircraft was authorized by a travel authorization issued September 30, 1980, allowing him to go anywhere in the United States for purposes of "mission support"; that by Army custom and practice he was entitled to have his wife accompany him on government aircraft without express authorization; and that his wife's mental and physical condition at the time constituted a medical emergency. But all of these contentions are

matters that go to the merits of the commanding officer's findings, which either were argued or could have been argued in the appeal before MG Clausen, the Army Judge Advocate General. Plaintiff has not shown that MG Clausen did not give proper consideration to them on review. Nor does plaintiff deny the truth of General Shoemaker's finding that "As to the misuse of aircraft, MG Cochran testified before me that his actions were admittedly wrong." (See p. 763, *supra.*) As indicated in *Dumas v. United States* and *Hagarty v. United States, supra,* it is not this court's function to review the merits of findings of guilt in Article 15 punishment proceedings, but only the disregard or violation of the Constitution, statute or regulations in the conduct of the proceedings.

 Finally, plaintiff contends that he was deprived of his basic rights both under the Constitution and the regulations in that MG Clausen affirmed the punishment in part on the basis of plaintiff having committed an offense with which he was not charged. As discussed earlier (p. 2), General Shoemaker charged plaintiff with and imposed punishment for two offenses: (1) wrongful appropriation of a government aircraft for his personal use; and (2) wrongful diversion of government facilities, property and manpower for the repair of a privately owned stove for plaintiff's boat, in violation of Article 92 UCMJ (10 U.S.C. § 892). While MG Clausen affirmed the guilty finding for the first offense without qualification, he affirmed the guilty finding for the second offense only to the extent of "a lesser offense of dereliction of duty, through negligence, in violation of Article 92, UCMJ, by wrongfully accepting a gift from a subordinate * * * and by wrongfully creating the appearance of using public office for private gain." However, he affirmed the entire punishment without reduction, as just and appropriate for the affirmed offenses.

It was reasonable for the Judge Advocate General to consider negligence in allowing a subordinate to use government facilities and manpower for repairing a general's personal property and thereby wrongfully creating the appearance of using public office for private gain as a lesser version of the charge of *causing* the diversion of government facilities and manpower for such purpose; and, therefore, it was permissible for the reviewing authority to find plaintiff guilty of such lesser offense. But the finding that plaintiff wrongfully accepted a gift (of $50 in repair parts for the stove) from the subordinate does not fit within the scope of the charge against which plaintiff was called to defend himself and to set forth circumstances in mitigation or extenuation thereof prior to imposition of Article 15 punishment. Even if MG Clausen's new findings are supported by "written matters submitted by MG Cochran's attorney which were not available" when General Shoemaker imposed his punishment, as MG Clausen stated in his decision, nothing in the regulations authorizes the reviewing authority to find an appellant guilty of an additional uncharged offense. Accordingly, the finding that plaintiff wrongfully accepted a gift from a subordinate must be vacated.

 Since the commanding officer, General Shoemaker, imposed a punishment on plaintiff for two offenses of which only one was fully affirmed on appeal, and since the reviewing authority, the Judge Advocate General, affirmed the same punishment as just and appropriate for two offenses, of which part of one has been set aside, this matter must be remanded to the Judge Advocate General for reconsideration of his decision as to the appropriateness of the punishment for the offenses which were affirmed by him and not vacated herein.

Accordingly, defendant's motion for summary judgment is denied. On the court's own motion, however, pursuant to Rule 60.-1(a)(1), the case is remanded to the Army Judge Advocate General for reconsideration of his decision as to the punishment which is appropriate for plaintiff's offenses, as set forth in this opinion.

Proceedings are suspended for 6 months pending receipt of the Judge Advocate General's decision. Pursuant to Rule 60.1(a)(5),

plaintiff's attorney is designated to report to the court at 60-day intervals as to the status of the proceedings on remand. Further proceedings shall be pursuant to Rule 60.1(b).