Ronald E. JAMISON

v.

The UNITED STATES.

No. 71–83C.

United States Claims Court.

Aug. 13, 1984.

Ronald E. Jamison, pro se.

Michael A. Gordon, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant.

## OPINION

YOCK, Judge.

In this military pay case, plaintiff, Ronald E. Jamison, instituted this action *pro se* seeking to have an Article 15 (nonjudicial punishment) proceeding, findings, and sentence overturned and to have his subsequent administrative discharge from the service declared a nullity. In doing this, the plaintiff wants the Court to correct alleged erroneous records, and order his reinstatement with back pay.

Plaintiff moved for judgment on the pleadings and defendant filed a cross-motion for summary judgment. For the reasons discussed below, the defendant's cross-motion for summary judgment is granted, plaintiff's motion for judgment on the pleadings is denied, and the case is to be dismissed.

Plaintiff entered on active duty with the United States Air Force on April 1, 1970, and remained on active duty until his administrative discharge on March 26, 1979. His enlisted term of service was originally due to expire on March 29, 1981. On July 18, 1978, while the plaintiff was acting in his capacity as a Staff Sergeant (SSgt) stationed at Kadena Air Base, Okinawa, he was awarded nonjudicial punishment (NJP) for two instances of unauthorized absence from duty and ordered to forfeit $500 of his pay pursuant to Article 15 of the Uniform Code of Military Justice, 10 U.S.C. § 815 (1982). On August 1, 1978, by endorsement to AF Form 3070 dated July 18, 1978, the plaintiff exercised his right to appeal this action to the base commander's superior. On August 25, 1984, the base commander's superior in command, Brigadier General James R. Brown, denied the plaintiff's appeal.

In January 1979, after a medical (psychiatric) evaluation, plaintiff was diagnosed as having a personality disorder, which was found to interfere with plaintiff's performance of his duties. On the basis of that diagnosis, plaintiff's unit commander on January 23, 1979, recommended to his base commander that the plaintiff be discharged from the Air Force for unsuitability. At approximately the same time, the plaintiff was notified by his unit commander of the recommendation for administrative discharge, the reasons therefore, and that he had the right to request a hearing before an administrative discharge board. He was also advised that he had the right to talk to and be represented by military counsel, employ civilian counsel of his own choosing, and submit statements on his own behalf. On January 29, 1979, plaintiff acknowledged that a military counsel had been made available to him and that he conditionally waived his right to a hearing before an administrative review board. The condition the plaintiff imposed was that he be administratively discharged with an honorable discharge certificate. This condition was approved by the plaintiff's unit commander. On March 7, 1979, the base staff judge advocate (JAG) reviewed the proposed action and plaintiff's case file and found the action to be legally sufficient and justified by the file. On March 15, 1979, the base commander approved the plaintiff's administrative discharge with an honorable discharge certificate to be awarded the plaintiff. The plaintiff was subsequently honorably discharged on March 26, 1979 at Travis AFB in California.

In 1981, the plaintiff initiated, but subsequently voluntarily withdrew, his petition for an administrative review of his nonjudicial punishment with the Air Force Board for the Correction of Military Records (AFBCMR). However, since that time and prior to filing this action, plaintiff has conducted a series of administrative attacks on the accuracy of his military records relat-

ing to both his nonjudicial punishment and his discharge by writing letters to various officials within the Air Force, and to members of Congress.

On February 11, 1983, the plaintiff filed a complaint in this Court asserting jurisdiction under 28 U.S.C. § 1491. In his complaint, he alleged that the nonjudicial punishment (Article 15) imposed on him was unlawful in that the procedures used to impose the punishment were devoid of fundamental fairness, were not in compliance with governing Air Force regulations, and were violative of his constitutional rights. He specifically complained that dishonest officials assigned to the Air Force Judge Advocate General's office in Washington, D.C., had altered or mutilated his personnel records and that the officer who had imposed nonjudicial punishment on him in 1978 had failed to comply with appropriate Air Force regulations by failing to notify him in writing that he had the right to appeal his nonjudicial punishment. Plaintiff requested this Court to void the nonjudicial punishment for these alleged infractions, refund the $500 imposed in punishment, and to correct his military records in this regard.

On May 18, 1983, the plaintiff moved in this Court for judgment on the pleadings. In this motion, the plaintiff expanded his complaints against the Air Force.[1] The plaintiff alleged that his administrative discharge in March 1979 was defective and void because the Air Force had relied on a defective Airman Performance Report (evaluation). The evaluation at issue was the last performance report placed in the plaintiff's military records and covered the period of time from May 3 to October 13, 1978. The report was placed into the plaintiff's records on or about December 22, 1978. The report was written by his enlisted supervisor who had supervised him for only the first 69 days of the entire 164-day reporting period, and who was in the same competitive category for promotion. The evaluation itself detailed that the plaintiff's performance was less than adequate, that the plaintiff had been transferred to a less demanding position sometime in the middle of the reporting period, and that the plaintiff had absented himself from his command for which he had received nonjudicial punishment during this period. The plaintiff was immediately advised of the derogatory report and was given the right to comment. The plaintiff, in exercising his right to comment, advised the command that he thought the offending report was unfair for all of the reasons enumerated above. The Air Force agreed with his complaint and caused the report to be removed from his military records on April 13, 1979.

In his motion before this Court, the plaintiff contends that the removal action on the offending evaluation was not removed in time to prevent his command from relying on the information to support its decision to discharge the plaintiff with an administrative discharge. Thus, the plaintiff contends that his administrative discharge, effected March 26, 1979, was defective and void. He therefore requests that his discharge be voided and that he be reinstated in the Air Force with full back pay.

On August 15, 1983, the defendant filed its opposition to plaintiff's motion for judgment on the pleadings and its own cross-motion for summary judgment. The defendant contends in its filing that the plaintiff's cause of action should be barred by the doctrine of laches and, in the alternative, that the plaintiff's allegations are meritless and should be rejected.[2]

---

1. In its motion for summary judgment, defendant indicated that it was not surprised by plaintiff's allegation of wrongful discharge by responding to the additional allegations, and manifested an intent, for the purposes of the motion, to treat plaintiff's motion for judgment on the pleadings as an amendment to the complaint. To the extent that the defendant is not prejudiced by these new allegations, for the purposes

of these motions only, this Court will treat all of plaintiff's allegations as though they were raised in the complaint. *See Cities Service Helex, Inc. v. United States*, 211 Ct.Cl. 222, 234 n. 14, 543 F.2d 1306, 1313 n. 14 (1976).

2. Defendant raised the equitable defense of laches in its motion, but this Court finds it unnecessary to address that issue due to the disposition of this case on the merits. *See*

As earlier indicated, the plaintiff's arguments in this case are meritless and should be dismissed.

### A. Nonjudicial Punishment Issues

Plaintiff filed this action seeking to overturn his nonjudicial punishment on procedural grounds in order to recover forfeited wages and have his records corrected. In *Dumas v. United States*, 223 Ct.Cl. 465, 620 F.2d 247 (1980), and more recently, in *Cochran v. United States*, 1 Cl.Ct. 759 (1983), *aff'd*, 732 F.2d 168 (Fed.Cir.1984), this Court gave detailed consideration to nonjudicial punishments under Article 15 of the Uniform Code of Military Justice (UCMJ) (10 U.S.C. § 815) and found the scope of its review of those proceedings to be extremely limited. *See Dumas, supra*, 223 Ct.Cl. at 470–71, 620 F.2d at 250; *Cochran, supra*, 1 Cl.Ct. at 765.

Article 15 nonjudicial punishment is "an administrative method of dealing with the most minor offenses." *Middendorf v. Henry*, 425 U.S. 25, 31–32, 96 S.Ct. 1281, 1285–1286, 47 L.Ed.2d 556 (1976). As Judge Miller stated in *Cochran*:

> Article 15 * * * provides a means whereby military commanders may impose nonjudicial punishment for minor infractions of discipline. * * * The legislative history states definitely that Article 15 nonjudicial punishment is noncriminal in character and in this sense has no connection with the military court-martial system. * * * [Under Article 15] [t]he accused has specific rights of appeal of which he must be notified.

1 Cl.Ct. at 764–65. In considering the nature and purpose of Article 15 proceedings, this Court recognized in *Cochran*:

> There is nothing in the training or expertise of the members of this court which qualifies them to substitute their judgment for that of the commanding officer of plaintiff's military unit in choosing which of the range of permissible punishments is most suitable for maintaining the discipline, morale and effectiveness of the organization; and a *de novo* judicial trial by this court would fly in the face of the pertinent legislative intent. * * * In a suit seeking to overturn nonjudicial punishment imposed under Article 15, this court's jurisdiction is limited to cases involving money claims founded upon allegations of lack of compliance with the requirements of the statute, the controlling regulations and the Constitution.

1 Cl.Ct. at 765–66 (citations omitted). This accords with the Court of Claims' analysis in *Dumas*, in which the Court held that review of Article 15 proceedings was limited to determining whether there had been "compliance with controlling regulations" and the Constitution to avoid prejudice to the alleged offender. 223 Ct.Cl. at 471, 620 F.2d at 250.

■ Plaintiff bases his nonjudicial punishment argument on three allegations of procedural error. First, the plaintiff alleges that he did not receive written notice of his right to appeal immediately after his punishment had been awarded to him by his command. Plaintiff does not prevail on this point. He cannot prevail on this point because there is no statutory or regulatory requirement that plaintiff be notified in *writing* of his right to appeal. The statutory and the regulatory scheme requires only that plaintiff be notified of his right to appeal. UCMJ, Article 15 (10 U.S.C. § 815); Air Force Regulation 111–9; *see also Cochran, supra*, 1 Cl.Ct. at 764. Here, he was orally advised of his right to appeal, and, in fact, exercised that right. His command, his command's superior officer and the staff judge advocate reviewed the plaintiff's NJP appeal and denied it in writing. Thus, plaintiff was afforded all of the procedural safeguards the UCMJ extended to him in this regard.

■ Plaintiff's second procedural allegation that he claims should overturn his

nonjudicial punishment is that Air Force JAG officers and others altered or otherwise mutilated his records. As evidence of this alleged mutilation, the plaintiff points to two distinct endorsement versions of his NJP form, AF 3070, dated July 18, 1978. Although there are clearly two slightly different versions in the record, and while the record does not reveal (nor does either party offer an explanation as to) why two different versions exist, the critical point is that it is immaterial. The essential information is there in either version. The obvious explanation is that there was an immaterial clerical error. Furthermore, the Air Force, at the plaintiff's request, has now corrected the records to remove the offending duplicate AF 3070 as of July 20, 1983.

■ Plaintiff's third procedural allegation is that his nonjudicial punishment should be voided and removed from his record, since the Air Force officer imposing the nonjudicial punishment threatened him with a harsher sentence if he appealed. Plaintiff has neither produced nor cited any evidence supporting this allegation. Furthermore, plaintiff did appeal the punishment, and, after careful review of the plaintiff's record, this Court has failed to discern any indication that would support a theory of coercion.

This Court finds that these three allegations of the plaintiff are simply inadequately substantiated.

### B. Plaintiff's Military Discharge

■ An enlisted member, such as the plaintiff, may be administratively discharged before the end of a term of service under circumstances prescribed by the Secretary of the Air Force. 10 U.S.C. § 1169 (1982); *see* 32 C.F.R. Part 41 (1983). One specific circumstance is that a member having a personality disorder may be discharged. 32 C.F.R. § 41.7(g)(1); *see* AFR 39–12, ¶ 2–4.b (1976). In January 1979, during the course of a psychiatric examination, plaintiff was determined by qualified Air Force medical personnel to be affected by such a disorder. Since this disorder was determined to affect and interfere with the performance of his military duties, plain-

tiff's commander recommended that plaintiff be discharged. This recommendation and its supporting documentation was approved by the base commander after a thorough legal review. Plaintiff was then given an honorable discharge in March 1979.

Air Force regulations provide for an administrative hearing on discharge recommendations. 32 C.F.R. §§ 41.4, 41.10(b), 41.11 (1982). Plaintiff was offered an administrative hearing in January 1979, at which he could have contested the reasons for his discharge. However, he chose to waive that hearing in exchange for receiving an honorable discharge, and the Air Force accepted that condition.

The plaintiff now contends, however, that his administrative discharge in March of 1979 was defective and void because the Air Force relied, at least in part, on a defective performance evaluation. As earlier discussed, the evaluation at issue was in fact ordered removed by the Air Force from the plaintiff's military records on or about April 13, 1979, some three weeks after he had been discharged from the Air Force.

While it is clear from the administrative record that the evaluation at issue was not yet expunged from plaintiff's records at the time he was being considered by his command for an administrative discharge, plaintiff offers no evidence that the defective evaluation formed any significant basis for the discharge. The evidence in the record strongly demonstrates that the plaintiff was in fact discharged for unsuitability for military duty, based upon his medically diagnosed personality disorder, which was found to interfere, and which would continue to interfere, with the performance of his military duties.

In addition, plaintiff was granted an honorable discharge, the highest type of discharge awarded. This further suggests that those responsible for plaintiff's discharge did not rely on plaintiff's last evaluation to his prejudice in formulating their decision. Moreover, even if he could dem-

onstrate such prejudice, plaintiff, in 1979, knowingly waived his opportunity to contest this cause for discharge. Plaintiff cannot now be heard to repudiate that waiver. *See Christie v. United States*, 207 Ct.Cl. 333, 518 F.2d 584 (1975).

There is simply no evidence in the record of this case that would permit this Court to conclude that the plaintiff is entitled to any of the relief sought—the nonjudicial punishment and discharge declared void, the refund of his forfeited pay, or his reinstatement with back pay.[3]

## CONCLUSION

For the above stated reasons, plaintiff's motion for judgment on the pleadings is denied, the defendant's cross-motion for summary judgment is granted, and the complaint is to be dismissed.

---

**3.** To the extent that there are procedural motions filed by the parties that are still pending at this time, such motions are denied as moot in view of the decision announced herein.