TATEL, Circuit Judge,
concurring:
Given our highly deferential standard of review, I concur. I write separately to point out that the Navy’s refusal to correct Turner’s record with respect to the very serious charges of which he was adjudged guilty at his Article 15 proceeding—but of which he was later acquitted at his discharge proceedings—undermines the very purpose of Article 15, namely, to help service members avoid the stigma of court-martial convictions while allowing military *319 commanders to act quickly to preserve order and morale.
Although Article 15 does not define what constitutes a “minor” offense, legislative history indicates that Congress understood the distinction to follow the then-prevailing Manual for Courts-Martial, see S.Rep. No. 486, 81st Cong., 1st Sess. (1949), reprinted in 1950 U.S.C.C.S. 2222, 2235, which provided that “[a]n offense for which the Articles of War prescribe a mandatory punishment or authorize the death penalty or penitentiary confinement is not a minor offense,” adding that “[o]ffenses such as larceny, fraudulently making and uttering bad checks, and the like, involve moral turpitude and are not to be treated as minor.” Hagarty v. United States, 196 Ct.Cl. 66, 449 F.2d 352, 357 (1971) (quoting MANUAL FOR Courts Martial ¶ 118 (1949)). The 1951 Manual for Courts-Martial, in effect when Congress passed the 1962 amendments expanding Article 15, essentially echoed this definition: “An offense for which ... confinement for one year or more is authorized is not a minor offense.” Manual for Courts-Martial ¶ 128(b) (1951).
The current version of the Manual for Courts-Martial removes this absolute bar to the use of Article 15 proceedings for those offenses for which one year’s imprisonment is authorized. It instead provides that a “minor offense” is only “[o]rdinarily” an offense not punishable by “a dishonorable discharge or confinement for longer than 1 year if tried by general court-martial.” Manual for Courts-Martial, Part V, § 1(e) (2000). That definition, on which we now rely, has been regularly interpreted as permitting commanders to use the nonjudicial punishment procedure for any number of nominally serious offenses— that is, offenses punishable by dishonorable discharge or lengthy terms of confinement — so long as the impact of the service member’s offense “upon military order and discipline [is] not so serious as to necessitate a court-martial.” Cappella v. United States, 224 Ct.Cl. 162, 624 F.2d 976, 979 (1980).
This executive expansion of Article 15 (which Turner does not challenge), however, has come with no concomitant expansion in the procedural protections afforded service members accused of nominally serious offenses. Turner’s case illustrates just how important those procedural protections are. At the Article 15 proceeding, Turner was charged with (among other things) indecent assault and indecent assault with intent to commit sodomy — i.e., attempted homosexual rape — among the most serious of the military crimes recognized by Article 134 of the Uniform Code of Military Justice. These serious charges, moreover, rested on nothing more than allegations that one of his shipmates woke up naked in a hotel room he shared with Turner and that Turner threw another shipmate down on a hotel bed and expressed some intent to perform oral sex on him, an incident that the alleged victim said he initially viewed as “horseplay.” After a summary proceeding at which Turner had no right to counsel, at which Captain Frank served simultaneously as prosecutor, judge, and jury, and which was governed by a preponderance-of-the-evidence standard — -rather than the reasonable-doubt standard that would govern at a court-martial — Turner was adjudged guilty of both offenses. Yet at the Administrative Discharge proceeding — where, unlike the Article 15 proceeding, Turner was represented by counsel, and his accusers both testified and were cross-examined — the three-member Discharge Board unanimously acquitted him of both charges, finding that the Navy had not shown by a preponderance of the evidence that Turner had committed either indecent assault or indecent assault with intent to commit sodomy.
*320 Despite Turner’s exoneration, his military record still indicates that he was found guilty of what amounts to the attempted rape of his shipmates, a fact that could have had serious consequences for his military career, and that may still have serious consequences in his civilian life. See, e.g., 32 C.F.R. § 310.41(i) (the Department of Defense may, without the service member’s consent, release military personnel records to law enforcement agencies, unless the disclosure is barred by federal statute). In view of the fact that Congress enacted Article 15 precisely to avoid creating a “permanent blot on the record of the individual punished,” which would follow him “not only throughout his service career but [would] follow[ ] him into civilian life,” and which “may adversely reflect on him if he is involved in difficulty with a civilian law enforcement agency,” H.R.Rep. No. 87-1612, at 3 (1962), I cannot imagine why the Secretary has not corrected Turner’s record to delete the Article 15 convictions for indecent assault and indecent assault with intent to commit sodomy.