**Randolph E. DUMAS and Fred Tucker**

v.

**The UNITED STATES.**

No. 426–78.

United States Court of Claims.

April 16, 1980.

Richard P. Fox, Los Angeles, Cal., atty. of record, for plaintiffs. Richard P. Fox and Max Gest, P. C., Los Angeles, Cal., of counsel.

William D. White, Washington, D. C., with whom was Asst. Atty. Gen. Alice Daniel, Washington, D. C., for defendant. Lieutenant Colonel Ludolf R. Kuhnell, III, Springfield, Va., and Captain Robert E. Su-temeier, Washington, D. C., U. S. Air Force, of counsel.

Before KASHIWA, KUNZIG and BEN-NETT, Judges.

## ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

KUNZIG, Judge:

Plaintiffs, as Airmen First Class in the United States Air Force, were charged with wrongful possession of marijuana and accepted nonjudicial punishment from their commanding officer pursuant to Article 15, Uniform Code of Military Justice, 10 U.S.C. § 815 (1976). They were ordered to forfeit $50.00 of their pay for two months and received a suspended reduction in grade. In this court, alleging constitutional defects in the Article 15 proceeding under the fourth, fifth and sixth amendments, plaintiffs demand correction of all records and return of their lost pay. The airmen moved for summary judgment, defendant filed its cross-motion, and the case is now before us for decision. We conclude we have jurisdiction and rule for defendant.

There is no material dispute over the facts of this case nor is there any significant difference between the situation of plaintiff Dumas and plaintiff Tucker. During the evening of January 14, 1976, plaintiffs, then Airmen First Class, (A1C), were riding in a car owned and operated by Airman Plank. At approximately 9:15 p. m. they approached the main gate of Vandenberg Air Force Base, California, where the car was stopped by Air Force security police (A1C Haun) because it did not display a base decal. A1C Haun detected the odor of marijuana coming from the vehicle, ordered the occupants out, and advised them of their rights pursuant to Article 31 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 831 (1976).[1] Upon the arrival of

---

1. 10 U.S.C. § 831(b) provides:

    (b) No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that

several other Air Force security police, the three individuals were searched. Dumas was found to be in possession of approximately 13.2 grams of marijuana; Tucker had approximately 42.4 grams of marijuana.

On February 5, 1976, plaintiffs were individually notified in writing (Air Force Form 3070) by their commander, Lieutenant Colonel John B. Kerr, Jr., of his intent to impose nonjudicial punishment pursuant to Article 15, UCMJ, 10 U.S.C. § 815 (1976). Plaintiffs were charged with wrongful possession of marijuana at Vanderberg Air Force Base in violation of Article 134, UCMJ, 10 U.S.C. § 934 (1976), the "General Article." [2] Air Force Form 3070, "Notification of Intent to Impose Nonjudicial Punishment" informed plaintiffs of their option either to accept the nonjudicial punishment of their commanding officer or to refuse nonjudicial punishment and demand a trial by court-marital. The notification also told plaintiffs, *inter alia*, that they did not have to give any information about the offense charged, that free military legal counsel would be provided to them upon request and if they elected nonjudicial punishment they were entitled to a defense of the charges either in writing, in person, or both, before their commanding officer. Plaintiffs were to indicate their acceptance of nonjudicial punishment or their demand for court-martial by checking the appropriate boxes on page two of Form 3070 and signing it at the bottom.

Plaintiffs chose to retain a civilian attorney for advice and representation. The attorney informed them that while they could demand trial by court-martial, the maximum punishment could be much greater than that under an Article 15, nonjudicial punishment proceeding. Plaintiffs elected

to accept nonjudicial punishment and further requested that they be allowed to make a personal presentation before their commander.

Plaintiffs, accompanied by their counsel, made this personal presentation before Lieutenant Colonel Kerr on February 24, 1976. Plaintiffs' attorney argued their fourth amendment rights had been violated by the search under principles established by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Lieutenant Colonel Kerr questioned plaintiffs about the circumstances surrounding the incident of January 14, 1976. They answered his questions freely. At the conclusion of plaintiffs' presentation, and after a brief consultation with an Air Force attorney, Lieutenant Colonel Kerr imposed nonjudicial punishment. Each plaintiff received a $50.00 per month forfeiture for two months and a suspended reduction to the grade of Airman. Article 15, UCMJ, 10 U.S.C. § 815(b)(2)(H) (1976), Air Force Regulation (AFR) 111–9 (July 24, 1974).

On February 24, 1976, plaintiffs appealed their punishment to the next superior in the chain of command, Colonel T. N. Mace, who denied the appeal in early April 1976. Plaintiffs then filed separate applications to the Air Force Board for the Correction of Military Records; both applications were denied by letter dated September 27, 1977. Plaintiffs timely filed their petition in this court on September 26, 1978.

Their next step was a motion for summary judgment which makes broad allegations that their constitutional rights were (or arguably could have been) violated. Specifically, it is alleged plaintiffs' search was (or may have been) conducted in violation of the fourth amendment; that their fifth

he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

2. Article 134, UCMJ, 10 U.S.C. § 934 (1976) provides:

Though not specifically mentioned in this chapter, all disorders and neglects to the

prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces, and crimes and offenses not capital, of which persons subject to this chapter may be guilty, shall be taken cognizance of by a general, special, or summary court-martial, according to the nature and degree of the offense, and shall be punished at the discretion of that court.

amendment rights against self incrimination were not recognized; and sixth amendment rights to confrontation were denied. It appears, however, that plaintiffs do not directly allege a violation *per se* of their constitutional rights but, by the end of their briefing, are arguing merely that their commanding officer in his administration of nonjudicial punishment was remiss in not giving adequate consideration to the constitutional objections raised.

Defendant first notes that in previous cases this court has limited its review of Article 15 proceedings to examination of whether applicable regulations were followed. *Hagarty v. United States*, 196 Ct.Cl. 66, 449 F.2d 352 (1971). Here, there is no question that all pertinent regulations were complied with by the Air Force. Article 15 nonjudicial punishment, defendant emphasizes, is an administrative method Congress has prescribed to deal with minor offenses committed by servicemen. By opting for this method of punishment plaintiffs waived their right to contest the circumstances of their apprehension and punishment with the benefit of the full constitutional protections accorded by a court-martial. Even assuming full constitutional rights apply to an Article 15 proceeding, defendant asserts, the facts demonstrate plaintiffs' constitutional rights were observed.

I.

■ A brief comment concerning our jurisdiction is appropriate before proceeding to a discussion of the merits of the case. In *United States v. Augenblick*, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969), the Supreme Court sharply circumscribed this court's jurisdiction to review judgments of courts-martial. Court of Claims jurisdiction is limited because of the finality language of Article 76, UCMJ, 10 U.S.C. § 876 (1976).[3] *See McDonald v. United States*, 205 Ct.Cl. 780, 507 F.2d 1271 (1974); *Artis v. United States*, 205 Ct.Cl. 732, 506 F.2d 1387 (1974). By its own terms, however, the finality provision of Article 76 applies only to *court-martial* proceedings. The fundamental character of an Article 15 nonjudicial proceeding, as here, is that it is *not* a trial by court-martial; plaintiffs expressly chose to forego the court-martial option. Consequently, the bar to review of court-martial proceedings presented by Article 76 in *United States v. Augenblick, supra*, is not directly applicable to Article 15 proceedings in the Court of Claims.

Accordingly, this court has undertaken review of Article 15 proceedings, *Hagarty v. United States*, 196 Ct.Cl. 66, 449 F.2d 352 (1971); *Conn v. United States*, 180 Ct.Cl. 120, 376 F.2d 878 (1967), to determine compliance with controlling regulations. In *Hagarty, supra*, 196 Ct.Cl. at 85, 449 F.2d at 362, we left open the question of our jurisdiction to review allegations of constitutional defects. In view of the inapplicability of the finality provision of Article 76 to Article 15 proceedings we conclude we have jurisdiction to review plaintiffs' money claims against the United States founded upon the Constitution. 28 U.S.C. § 1491 (1976). *See Gross v. United States*, 209 Ct.Cl. 70, 531 F.2d 482 (1976). We raise this point *sua sponte*, simply to illustrate that in the case at bar *Augenblick* is not controlling; neither party has sought to contest our jurisdiction.

II.

A general discussion of the nature and function of Article 15 nonjudicial punish-

---

**3.** 10 U.S.C. § 876 (1976) provides:

§ 876. Art. 76. Finality of proceedings, findings, and sentences

The appellate review of records of trial provided by this chapter, the proceedings, findings, and sentences of courts-martial as approved, reviewed, or affirmed as required by this chapter, and all dismissals and discharges carried into execution under sentences by courts-martial following approval, review, or affirmation as required by this chapter, are final and conclusive. Orders publishing the proceedings of courts-martial and all action taken pursuant to those proceedings and binding upon all departments, courts, agencies, and officers of the united States, subject only to action upon a petition for a new trial as provided in section 873 of this title (article 73) and to action by the Secretary concerned as provided in section 874 of this title (article 74) and the authority of the President.

ment and a review of two pertinent Supreme Court cases, *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) and *Middendorf v. Henry*, 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976), should also precede analysis of the constitutional arguments raised by plaintiffs.

In the Uniform Code of Military Justice Congress has set forth four methods for disposing of cases involving offenses by servicemen: the general, special, and summary courts-martial and disciplinary punishment administered by the accused's commanding officer pursuant to Article 15, UCMJ, 10 U.S.C. § 815 (1976). The general and special courts-martial are essentially full judicial proceedings, presided over by lawyer judges with counsel for both the prosecution and defense. General courts-martial are authorized to award any lawful sentence, including death. Article 18, UCMJ, 10 U.S.C. § 818 (1976). The range of punishments available under a proceeding becomes more restricted and comparatively milder as procedures become less formally judicial in nature. For example, while a summary court-martial is a proceeding conducted by a single commissioned officer, the punishments which may be imposed are specifically restricted to penalties such as one month's confinement or reduction in grade. Article 20, UCMJ, 10 U.S.C. § 820 (1976).

Article 15 nonjudicial punishment, UCMJ, 10 U.S.C. § 815 (1976),[4] is the least formalized method of discipline, conducted personally by the accused's commanding officer. The legislative history accompanying 10 U.S.C. § 815 states "Article 15 . . . provides a means whereby military commanders may impose nonjudicial punishment for minor infractions of discipline." Its utilization permits the services "to reduce substantially the number of courts-martial for minor offenses, which result in stigmatizing and impairing the efficiency and morale of the person concerned." S.Rep. No. 1911, 87th Cong., 2d Sess. 2–4, *reprinted in* [1962] U.S.Code Cong. & Ad-

min.News, pp. 2379, 2380–82. The legislative history states definitely that Article 15 nonjudicial punishment is noncriminal in character and "in this sense has no connection with the military court-martial system." *Id.*

Under Article 15 the accused is given specific notice of the offense charged and asked to elect for either nonjudicial punishment by his commanding officer or demand trial by court-martial. Election of nonjudicial punishment constitutes a waiver of the right to demand trial. *Manual for Courts-Martial*, (hereinafter MCM), ¶ 133 (rev.ed. 1969). But failure to demand trial by court-martial, however, "is not a plea of guilty to the described offense(s). Accordingly, commanders must carefully consider all matters submitted in defense." Air Force Regulation (AFR) 111–9(6)(h) (July 24, 1974).

If nonjudicial punishment is elected the accused is given a reasonable time for preparation and then appears before his commanding officer to offer matters in defense or mitigation of the offense charged. The accused may call witnesses who are reasonably available locally and who can be presented without legal process. AFR 111–9(6)(e). There is no requirement at the accused's appearance for the commander to *present* evidence to establish the commission of the offense or offenses. *Id.* No formal evidentiary standards apply to Article 15 proceedings, however, under Air Force regulations, "punishment should be imposed only when the commander is convinced by reliable evidence that the offender committed the offense." AFR 111–9(4)(a).

If, after the accused's presentation, the commander is convinced the offender committed the offense, nonjudicial punishment may be imposed. The punishments a commanding officer can award are strictly limited and significantly milder than those authorized under courts-martial. The authorized punishments vary somewhat according

---

**4.** 10 U.S.C. § 815 has been implemented service-wide by the *Manual for Courts-Martial* Chapter XXVI, ¶ 128–¶ 135 (rev.ed.1969). The

Air Force Regulations (AFR) governing Article 15 nonjudicial punishment are contained in AFR 111–9 (July 24, 1974).

to the rank of the commanding officer and rank of the accused, but the maximum punishments are: 30 days' correctional custody; 60 days' restriction to specified limits; 45 days' extra duties; forfeiture of one-half of one month's pay per month for two months; detention of one-half of one month's pay per month for three months; reduction in grade. Article 15, UCMJ, 10 U.S.C. § 815; MCM ¶ 131; AFR 111–9. The accused has specific rights of appeal of which he must be notified.

The Supreme Court has not directly ruled on the degree to which constitutional rights available in civilian criminal proceedings apply to noncriminal Article 15 actions in the military. The Court's decisions in *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) and *Middendorf v. Henry*, 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976), however, forcefully convey two principles which control our decision herein.

■ The first principle is a general one—that the demands of discipline and duty in military society serve clearly to distinguish the standards governing military justice from those applicable to civilian proceedings. "[I]t is the primary business of armies and navies to fight or be ready to fight wars should the occasion arise." *U. S. ex rel. Toth v. Quarles*, 350 U.S. 11, 76 S.Ct. 1, 5, 100 L.Ed. 8, 17 (1955). With regard for "unique military exigencies," *Schlesinger v. Councilman*, 420 U.S. 738, 757, 45 S.Ct. 1300, 43 L.Ed.2d 591 (1975), the Court "has long recognized that the military is, by necessity, a specialized society separate from civilian society." *Parker v. Levy*, 417 U.S. at 743, 94 S.Ct. at 2555. In *Middendorf v. Henry*, 425 U.S. at 46, 96 S.Ct. at 293, the Court quoted its opinion in *U. S. ex rel. Toth v. Quarles*, 350 U.S. at 17, 76 S.Ct. at 5, which describes the ramifications of this distinction:

> [T]rial of soldiers to maintain discipline is merely incidental to an army's primary fighting function. To the extent that those responsible for performance of this primary function are diverted from it by the necessity of trying cases, the basic fighting purpose of armies is not served

> . . . [M]ilitary tribunals have not been and probably never can be constituted in such way that they can have the same kind of qualifications that the Constitution has deemed essential to fair trials of civilians in federal courts.

This concept was aptly summarized in *Parker v. Levy*, 417 U.S. at 758, 94 S.Ct. at 2563:

> While the members of the military are not excluded from the protection granted by the First Amendment, the different character of the military community and of the military mission requires a different application of those protections. The fundamental necessity for obedience, and the consequent necessity for imposition of discipline, may render permissible within the military that which would be constitutionally impermissible outside it.

Therefore, we find this first principle draws a distinction between military law and civilian law with regard to the applicability of constitutional concepts. Because this case arises in the context of military justice, plaintiffs' broad constitutional arguments must be viewed in a different light than if principles of civilian law directly governed.

■ The second principle conveyed by the Court's opinions is that Article 15 is an "*administrative* method of dealing with the most minor offenses", *Middendorf v. Henry*, 425 U.S. at 31–32, 96 S.Ct. at 1286 (emphasis added), thus, the fifth and sixth amendment rights applicable to *criminal* proceedings do not apply to Article 15 proceedings. In *Middendorf v. Henry*, the Court determined servicemen had no sixth amendment right to counsel in summary courts-martial because the summary court-martial was not a "criminal prosecution" within the meaning of the sixth amendment. *Middendorf v. Henry, id.* at 34, 96 S.Ct. at 1287. Proceedings under Article 15 nonjudicial punishment are less judicial in nature than those by a summary court-martial and the permissible range of punishment is more circumscribed . As a matter of straightforward logic, it follows that Article 15 proceedings cannot be deemed to be "criminal

prosecutions" within the meaning of the sixth amendment if a summary court-martial is not. This conclusion is supported by the Court's frequent reference to Article 15 proceedings as administrative, not criminal, in character. *Middendorf v. Henry, id.* at 31–32, 96 S.Ct. at 1285–1286; *Parker v. Levy,* 417 U.S. at 750, 94 S.Ct. at 2558. As we noted, *supra,* Congress also has explicitly stated Article 15 proceedings are non-criminal proceedings.

With this background we may now weigh plaintiffs' constitutional arguments.[5]

### III.

Plaintiffs' fifth and sixth amendment claims have no adequate legal foundation. Article 15 proceedings clearly are not criminal prosecutions within the meaning of the rights plaintiffs claim under those amendments. *See Middendorf v. Henry, supra; United States v. Booker,* 5 M.J. 238 (C.M.A. 1977). Therefore, the rights listed thereunder applicable to criminal prosecutions do not apply to Article 15 proceedings.

The fifth and sixth amendment contentions also lack merit when the facts are examined. Insofar as plaintiffs' right against self incrimination is concerned, plaintiffs' incident reports (Air Force Form 1569) show plaintiffs were first informed of their right to remain silent pursuant to Article 31 UCMJ, 10 U.S.C. § 831 (1976), when the Air Force security police directed them to exit the vehicle at the Vandenberg Air Force Base gate. They were again explicitly informed by Air Force Form 3070, "Intent to Impose Nonjudicial Punishment" that they had a right to remain silent. They were represented by counsel during the Article 15 proceedings before Lieutenant Colonel Kerr. They admitted and confirmed all the circumstances surrounding

the search and admitted that the substance in question had been taken from their possession. Plaintiffs were fully informed of their fifth amendment rights yet made statements of confession nevertheless.

As to the right to confrontation of witnesses under the sixth amendment, the commanding officer in an Article 15 proceeding is under no obligation to call witnesses. AFR 111–9(6)(e). The commanding officer need only be convinced by reliable information that the offender committed the offense. AFR 111–9(4)(a). For reliable information Lieutenant Colonel Kerr had plaintiffs' detailed incident reports[6] and their admission that they realized the substance found on their persons was marijuana. This was certainly sufficient information for his conclusion the offenders "committed the offense." AFR 111–9(4)(a).

■ In summary, therefore, plaintiffs' fifth and sixth amendment arguments are insupportable from a viewpoint of either legal principle or fundamental fairness. Upon the advice of counsel they elected Article 15 nonjudicial punishment to avoid the risk of greater penalties which could have been imposed by a court-martial. All regulations pertaining to Article 15 punishment were scrupulously followed. Plaintiffs' rights were not violated.

Turning to plaintiffs' fourth amendment claim, it differs from the fifth and sixth amendment claims because the right against unreasonable searches and seizures is not limited to "criminal prosecutions" as are the relevant guarantees of the fifth and sixth amendments. Defendant contends plaintiffs waived their fourth amendment rights by electing the procedure of nonjudicial punishment, or at least waived their right to contest the reasonableness of their

---

5. Our discussion of the constitutional issues is appropriate since it has yet to be established that an accused waives *all* constitutional rights by electing Article 15 nonjudicial punishment. Indeed, in a letter to plaintiffs' attorney dated October 7, 1976, Robert W. Norris, Colonel, USAF, Chief of the Appellate Defense Division of the Office of the Judge Advocate General remarks: "Now as to the constitutional ques-

tion, I do not interpret the letter [previously sent to plaintiffs' attorney] to mean that an individual waives any of his constitutional rights by accepting an Article 15. On the contrary, I am convinced he does not."

6. Plaintiffs' attorney had access to these incident reports, A.F. Form 1569, in compliance with AFR 111–9(4)(b).

search before the commanding officer. It is unnecessary for us to reach the question of the degree to which the exclusionary rule must be applied to an Article 15 proceeding because we hold that even if the fourth amendment was applicable, the search conducted by defendant's· agents was within constitutional limits.

The undisputed facts (as contained in the incident reports) show that the car in which plaintiffs were riding approached the main gate of Vandenberg Air Force Base without a base decal. A1C Haun, Main Gate Guard, stopped the vehicle. He "detected the odor of marijuana emanating from the vehicle."[7] He had all three occupants exit the car and read them their rights pursuant to Article 31, UCMJ. When another Air Forcè Sergeant arrived (Sergeant Campbell) plaintiffs were searched. The absence of a base decal on a vehicle entering a military installation and the odor of marijuana coming from it constituted sufficient probable cause for detention and search of the vehicle's occupants. *See United States v. Hessler*, 4 M.J. 303 (CMA 1978), *on reconsideration*, 7 M.J. 9 (1979); *United States v. Holsworth*, 7 M.J. 184 (CMA 1979). The evidence discovered was admissible against plaintiffs.[8]

Plaintiffs finally suggest that their treatment was unfair in that to insure they would receive full consideration of their constitutional arguments they would have had to risk a court-martial, which, though offering greater procedural safeguards than an Article 15 proceeding, brings the possibility of greater penalties. Statements of the Court in *Middendorf v. Henry*, 425 U.S. at 46–48, 96 S.Ct. at 1293, squarely answer this argument. Commenting on the decision of a serviceman to proceed either without counsel by summary court-martial or opt for trial by special or general court-martial at which counsel is provided, the Court remarked:

> But if the accused has such a claim, if he feels that in order to properly air his views and vindicate his rights, a formal, counseled proceeding is necessary he may simply refuse trial by summary court-martial and proceed to trial by special or general court-martial at which he may have counsel.

> \*　\*　\*　\*　\*　\*

> It is true that by exercising this option the accused subjects himself to greater possible penalties imposed in the special court-martial proceeding. However, we do not find that possible detriment to be constitutionally decisive. We have frequently approved the much more difficult decision, daily faced by civilian criminal defendants, to plead guilty to a lesser

7.  A1C Haun identified the odor of marijuana from past job-related incidents and from being exposed to burning "marijuana awareness wafers" during security police training.

8.  Alternatively, plaintiffs' search might well have been justified under an analysis of probable cause for arrest or apprehension, apprehension in fact [accomplished when plaintiffs were ordered out of the vehicle, detained, and read their rights, *see United States v. Fleener*, 21 U.S.C.M.A. 174, 44 C.M.R. 228 (1972); *United States v. Beck*, 598 F.2d 497 (D.C.Cir. 1979)] and lawful search incident to arrest or apprehension. MCM ¶ 152; *United States v. Robinson*, 414 U.S 218 (1973); *United States v. Brashears*, 21 U.S.C.M.A. 552, 45 C.M.R. 326 (1972). But this analysis was not presented to the court.

In passing, we note important considerations would clearly weigh against full application of the exclusionary rule to Article 15 proceedings. As the Supreme Court stated in *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974), the exclusionary rule "has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons." *See Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). We have reviewed, *supra*, how the Court also recognizes that the demands of obedience and discipline in the military warrant a different approach to constitutional questions than that governing civilian justice. For this reason, and because of the noncriminal nature of an Article 15 proceeding and a serviceman's voluntary election of Article 15 in lieu of a court-martial, we think it highly questionable whether the normal exclusionary rule is applicable to Article 15 proceedings. We agree with the statement that " 'military necessity' gives rise to an exception to the Fourth Amendment not mirrored in the civilian sector." *United States v. Hessler*, 4 M.J. 303, 307 (CMA 1978) (Fletcher, C. J., concurring in the result). The issue, however, is not directly before us in this case.

included offense. *E. g., Brady v. United States*, 397 U.S. 742, 749–50 [90 S.Ct. 1463, 1469, 25 L.Ed.2d 747, 757] (1970).

█ The situation of plaintiffs herein is precisely analogous. If the airmen were convinced they had substantial constitutional defenses, they had the option to proceed by court-martial at which their constitutional arguments would have been fully litigated. Instead, on the advice of counsel, they opted to receive Article 15 nonjudicial punishment, with its attendant lesser penalties. They were given the opportunity to make a brief presentation before their commanding officer. Under Air Force Regulations, AFR 111–9, the MCM, and 10 U.S.C. § 815 (1976), plaintiffs were accorded all the rights to which they were entitled in an Article 15 proceeding. They cannot complain they were misled about the extent of their rights in such proceeding because they were advised by counsel prior to making their choice and the nature of Article 15 proceedings is clearly delineated by pertinent Air Force regulations and the MCM.

Accordingly, upon consideration of the parties' submissions and after oral argument, plaintiff's motion for summary judgment is denied. Defendant's cross-motion for summary judgment is granted and the petition is dismissed.