**Krzysztof G. SOBCZAK, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 09–189C.

United States Court of Federal Claims.

June 30, 2010.

Krzysztof G. Sobczak, Plaintiff, pro se.

Patryk J. Drescher, United States Department of Justice, Civil Division, Washington, DC, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director, for defendant. Marc S. Brewen, Department of the Navy, of counsel.

## OPINION

BRUGGINK, Judge.

This action is brought by Krzysztof Sobczak, a former Marine Captain, who represents himself. He seeks to show that the United States Marine Corps ("USMC") erred in various procedural respects when it involuntarily discharged him. Pending are the parties' cross-motions for judgment on the administrative record. The motions are ready for disposition. We held oral argument on March 29, 2010. For the reasons set forth below, we grant defendant's motion and deny plaintiff's cross-motion.

## BACKGROUND [1]

After enlisting in the USMC, Mr. Sobczak became an officer in 2000. Eventually, he was promoted to Captain. On June 6, 2006, the USMC assigned him to be Executive Officer ("XO") of the Marine Corps Recruiting Station ("RS") in Chicago.

---

1. The facts are drawn from the Administrative Record ("AR") filed by defendant and supplemented by Mr. Sobczak. In his briefing, Mr. Sobczak sought to supplement the record with a number of documents contemporaneous with the events of his discharge along with a new affidavit by his former defense counsel, Mr. Patrick Callahan. Defendant objects only to the affidavit. We admit all the materials other than the affidavit. The affidavit did not exist prior to the litigation and does not meet any exception for supplementing the record. *See Florida Power & Light Co.,* 470 U.S. 729, 743, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985) ("The focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.").

RS Chicago is part of the 9th Marine Corps District. During the relevant period, it was commanded by Colonel Peterson. The 9th District is part of the Western Recruiting Region ("WRR"), headquartered at the Marine Corps Recruiting Depot ("MCRD") in San Diego, California, and commanded then by General Salinas. The Marine Corps Recruiting Command ("MCRC") oversees all the recruiting efforts of USMC and is located in Quantico, Virginia. It was under the command of General Tryon. The MCRC in turn reports to the Marine Corps Combat Development Center ("MCCDC"), also in Quantico, and commanded then by General Amos.

### The Investigation

Soon after Capt. Sobczak arrived at RS Chicago in July 2006, the district leadership received information that he had installed unauthorized software on his computer. He was told to remove it. In December, one of Capt. Sobczak's subordinates at the RS, Sergeant Hill, alerted the district to Capt. Sobczak's possibly improper personal use of one of the RS's automobiles. In addition, the district was informed of general discontent at the RS about Capt. Sobczak's leadership. Col. Peterson therefore appointed Lieutenant Colonel Marr as Investigative Officer ("IO") and charged him with undertaking a Command Investigation into the allegations.

During his investigation, Lt. Col. Marr interviewed several Marines and civilians stationed at RS Chicago. Two of the enlisted Marines, Staff Sergeants Baker and Bodin, furnished information about a radio-station-sponsored recruiting event, the "B96 Bash." They told Lt. Col. Marr that they had seen Capt. Sobczak arrive at the bash, drink a beer and then drive away shortly thereafter in a silver Dodge Stratus, a government-owned vehicle. In addition, Lt. Col. Marr interviewed and received statements from other personnel and civilians at RS Chicago—including Jason McKnight, an IT specialist.

On February 12th and 13th of 2007, Lt. Col. Marr interviewed Capt. Sobczak. He informed Capt. Sobczak that he was suspected of the following: (1) misusing his government vehicle; (2) placing unauthorized hardware and software on his government computer; and (3) using commuter vouchers illegally. In regard to the first item, Lt. Col. Marr told Capt. Sobczak that he was suspected of violating regulations against using government vehicles to commute to and from work. In response, Capt. Sobczak maintained the propriety of using his government vehicle to commute from home. Later in the interview, Lt. Col. Marr presented Capt. Sobczak with the statements of SSgts. Baker and Bodin. In Lt. Col. Marr's summary of this interview, he records that Capt. Sobczak admitted to driving a government-owned vehicle after having a beer at the B96 Bash and that he understood that this action violated regulations. As to the second item, Capt. Sobczak stated that only one unauthorized software program remained on his computer—an unlicensed copy of Adobe Acrobat. Regarding the third item, Capt. Sobczak told Lt. Col. Marr that he used the vouchers to purchase transit tickets for visiting superior officers, a permissible use.

Capt. Sobczak also told Lt. Col. Marr that the statements of SSgts. Baker and Bodin were untrue and that he wanted to question them in order to prove that they had lied to Lt. Col. Marr. Lt. Col. Marr verbally ordered Capt. Sobczak not to contact the Staff Sergeants.

The following day, Col. Peterson temporarily relieved Capt. Sobczak of his duties as XO. Upon completing the investigation, Lt. Col. Marr recommended that Capt. Sobczak be permanently relieved of his duties as XO of RS Chicago and that Gen. Salinas, the MCRD's Commanding General, impose Non-Judicial Punishment ("NJP") on Capt. Sobczak under Article 15 of the United States Code of Military Justice ("UCMJ").

Gen. Salinas followed Lt. Col. Marr's recommendation and chose to impose NJP in April 2007. She notified Capt. Sobczak in a letter that he was being charged under two articles of the UCMJ: 92 and 133. Under Article 92, he was charged with two specifications: Failure to Obey a Lawful Order and Dereliction of Duty. The first alleged that Capt. Sobczak violated lawfully written orders through his personal use of a government owned vehicle and subsidized transpor-

tation vouchers. The second specification alleged that he was derelict in his duties for willfully consuming alcohol and operating a government-owned vehicle within the next eight hours. He was charged under Article 133 with Conduct Unbecoming an Officer and Gentleman. Five actions were asserted in support of this charge: personal use of a government vehicle; wrongfully using travel vouchers; driving a government vehicle after drinking; installing unauthorized software; and lying to a civilian—telling Mr. McKnight that the USMC had issued him the unauthorized software.

 In that same letter, Gen. Salinas advised Capt. Sobczak of his administrative rights: to have counsel appointed;[2] to examine available statements and other evidence upon which the allegations were based; to inspect all evidence to be considered; to offer matters in mitigation, extenuation, or defense of the allegations; and to appeal any imposition of NJP. Finally, the letter allowed Capt. Sobczak to opt out of the Article 15 NJP process and instead demand a trial by court-martial, which would have afforded him greater procedural rights. Capt. Sobczak elected the NJP process.[3]

### The NJP Hearing

The NJP hearing occurred on May 17, 2007. Gen. Salinas, along with Col. Peterson, Major Peterson who was the Deputy Staff Judge Advocate of MRCD San Diego, a stenographer, and Capt. Sobczak were present at the hearing. In addition, Gen. Salinas interviewed Major Jackola, Capt. Sobczak's immediate supervisor, via telephone during the hearing. At the beginning of the hearing, Capt. Sobczak pled guilty to installing unauthorized software on his computer, one

of the events constituting the charge of Conduct Unbecoming an Officer and Gentleman. He pled not guilty to the other charges.

Gen. Salinas went through the charges and explained that she would be relying on Lt. Col. Marr's investigative materials, specifically SSgt. Baker's and SSgt. Bodin's written statements regarding Capt. Sobczak's actions at the B96 Bash, Mr. McKnight's statement about the software, Capt. Sobczak's interview with Lt. Col. Marr, and a "Black Box" use log from Capt. Sobczak's government-issued vehicle. Capt. Sobczak had been given access to this information prior to the hearing.

During the hearing, Capt. Sobczak asserted that Maj. Jackola had given him permission to use the government vehicle to commute. Capt. Sobczak claimed to have a recording of a telephone call with Maj. Jackola, in which he granted that permission. Maj. Jackola stated during the hearing that he had not had such a telephone conversation with Capt. Sobczak. When asked, Capt. Sobczak declined to produce the tape because he said he had secretly recorded it. Gen. Salinas did not insist on production of the tape.

Before concluding the hearing, Gen. Salinas asked Capt. Sobczak if he had "anything else [he] want[ed][her] to consider" and whether he had "[a]ny witnesses that [he] wanted [her] to call."[4] He replied "no" to both questions.[5] After deliberating, Gen. Salinas found Capt. Sobczak guilty of Dereliction of Duty and Conduct Unbecoming an Officer and Gentleman. She did not find him guilty of the Violation of a Lawful Order charge.[6] Finally, Gen. Salinas gave him an-

---

2. Capt. Sobczak elected not to have counsel.

3. In his complaint, Mr. Sobczak claimed that the USMC violated his constitutional due process rights. In his first brief, Mr. Sobczak goes on to say "[i]n the event that [the court] finds that [ ] constitutional safeguards should be available in said proceeding, [Mr. Sobczak] requests leave to amend the complaint to fully state [a constitutional] claim." Plaintiff's Response and Cross-Motion at 13. ("Pl.Mot."). Constitutional rights do not apply to Article 15 NJP proceedings, however. *See Middendorf v. Henry*, 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976); *Dumas v.*

*United States*, 223 Ct.Cl. 465, 471, 620 F.2d 247 (1980). Thus, we deny Mr. Sobczak's request for leave to amend the complaint.

4. AR 252.

5. *Id.*

6. We take this to mean that she found that Capt. Sobczak's personal use of a government vehicle and improper use of commuter vouchers were not sustained but the other charges were.

other chance to offer additional statements or witnesses in mitigation. He declined.[7]

At the hearing, Gen. Salinas informed Capt. Sobczak that she would issue a Punitive Letter of Reprimand ("PLOR"), which would become part of his official service record. She also imposed a forfeiture of $4000 in pay. Finally, Gen. Salinas notified Capt. Sobczak of his right to appeal.

Capt. Sobczak elected to appeal only the Dereliction of Duty charge, leaving unchallenged the finding of Conduct Unbecoming an Officer and Gentleman. On May 24, 2007, he sent his appeal through Gen. Salinas to Gen. Tryon, head of the MCRC. The applicable regulations only permitted an appeal based on the allegedly unjust or disproportionate nature of the punishment. Nevertheless, Capt. Sobczak also argued that he had not committed the offense. He contended that the sergeants' statements were "mistaken."[8] Gen. Tryon denied Capt. Sobczak's appeal on August 3, 2007.[9]

On August 17, 2007, Gen. Salinas issued the PLOR and sent a report, containing the complete NJP record and the PLOR to Gen. Tryon, who had the option of endorsing the NJP findings and sending them on to Gen. Amos. In the report she recommended that Gen. Amos convene a Board of Inquiry ("BOI") in which Capt. Sobczak would have to show cause as to why he should be allowed to remain in the USMC. She sent the PLOR to Capt. Sobczak along with a copy of the entire report. The letter notified Capt. Sobczak that he had to appeal within five days of receipt. On September 7, Gen. Tryon endorsed Gen. Salinas's recommendation and sent the report to Gen. Amos.

Although the letter was sent to him on September 7, Capt. Sobczak did not acknowledge receiving either Gen. Salinas's report or the PLOR until October 2. The next day,

October 3, Gen. Amos notified Capt. Sobczak by letter that a BOI would be convened. The letter informed Capt. Sobczak of his rights before the Board, which included "30 days to prepare his or her case with reasonable additional time, as determined necessary by [the BOI]."[10]

On October 9, Capt. Sobczak appealed his PLOR to Gen. Tryon, who denied it on October 25. Gen. Tryon based the denial on lack of timeliness but went on to consider the merits of the appeal, finding that the PLOR was factually accurate and procedurally proper. In the interim between filing his appeal and receiving Gen. Tryon's denial, Capt. Sobczak sent a letter to Gen. Amos, arguing that the pendency of the appeal prevented Gen. Amos from convening a BOI.

### The BOI

The BOI was convened, at least on paper, on November 10, 2007. On November 19, Gen. Salinas appointed certain officers to constitute the Board, which was to assemble on November 29, in San Diego. That hearing did not take place. Instead, on December 11, membership of the Board changed and a new hearing date of December 14 was assigned.

Prior to the BOI hearing, Capt. Sobczak had made three requests for access to records and witnesses, the final request evidently through his counsel, Captain Callahan. The first request, submitted on November 28, 2007, was for production of sixteen documents and access to thirty individuals "for depositions prior to the proceedings."[11] Capt. Sobczak incorrectly routed this request to Gen. Salinas instead of Gen. Tryon. The USMC did not respond to this request.

Capt. Sobczak submitted his second request for access to witnesses along with a request for a continuance to Gen. Tryon on

---

7. AR 256.

8. AR 428.

9. On September 7, 2007, Capt. Sobczak requested, under the Freedom of Information Act ("FOIA"), that the USMC produce the memorandum from the Staff Judge Advocate that Gen. Tryon used in making his decision. *See* 5 U.S.C. § 552 (2006). The USMC provided a redacted

copy of the memo on September 24. Unhappy with the partial denial, he appealed it on November 14, to the agency's FOIA authority. The authority denied this appeal on January 15. This denial does not form the grounds for a challenge here.

10. AR 635.

11. AR 1097.

December 11, 2007. Capt. Sobczak claimed the chain of command was limiting his access to witnesses. He alleged that his command told him that only Capt. Callahan, would be able to depose the Chicago witnesses and only in person. Then, according to Capt. Sobczak's second request, Capt. Callahan's command told him that he would be unable to travel from his assigned location, San Diego, to Chicago to participate in the depositions. That same day, a Colonel Miller responded in writing by directing Capt. Sobczak to go through Capt. Callahan for his requests instead of going directly to Gen. Tryon. The record does not contain the third request for information from either Capt. Sobczak or Capt. Callahan, but, apparently in response to a request from Capt. Callahan, on December 12, the USMC gave Mr. Sobczak access to three of the sixteen documents and denied the others as irrelevant, privileged, or not in existence. This response did not address Mr. Sobczak's desire for a continuance, although we note that there had been two prior dates set for the hearing, November 29 and December 11.

In response to the witness requests, Colonel White gave Capt. Callahan permission to contact and interview personnel, including Ssgts. Bodin and Baker, with Capt. Sobczak in attendance. Capt. Callahan never requested orders to travel from San Diego to Chicago[12] but did interview several individuals from Capt. Sobczak's previous assignments by telephone.[13] At RS Chicago, Capt. Callahan was able to contact by phone only Captain Robinson, the new XO for the RS. Capt. Sobczak's duty station and residence remained Chicago throughout this period.

The BOI met on December 14, 2007, in San Diego, California. Colonel Habel was the senior member of the BOI. Lieutenant Colonels Begin and Sellers were the other two members. Both Capt. Sobczak and Capt. Callahan were present.

During the hearing, the prosecution called Col. Peterson, Lt. Col. Marr, and Maj. Jackola. Capt. Callahan had the opportunity to cross-examine each. Capt. Callahan called six witnesses for the defense: Capt. Robinson; Captain Shaw, the officer who originally recruited Capt. Sobczak; Capt. Sobczak; Mr. Brundidge, a civilian IT worker; and Ms. Brewster, another civilian IT worker. The defense did not call SSgt. Bodin or SSgt. Baker. At the end of the proceeding, Col. Habel asked each side if it had anything further. Neither side did. After deliberating, the BOI unanimously found that Capt. Sobczak had violated Article 92's prohibition against Dereliction of Duty and Article 133's prohibition against Conduct Unbecoming an Officer and Gentleman. By a two to one vote, the BOI recommended that Capt. Sobczak be separated from the USMC with a general (under honorable conditions) discharge.

Capt. Sobczak appealed to the Secretary of the Navy for consideration on March 6, 2008. The Assistant Secretary of the Navy for Manpower and Reserve Affairs, on behalf of the Secretary of the Navy, rejected the appeal and approved Capt. Sobczak's separation on September 5, 2008. On September 16, 2008, Capt. Sobczak received separation counseling. The USMC discharged him on September 30, 2008.

## DISCUSSION

### I. Jurisdiction

■ The Tucker Act grants this court jurisdiction to hear claims for money founded upon acts of Congress. 28 U.S.C. § 1491 (2006). By statute a "member of a uniformed service who is on active duty" is entitled to receive basic pay. 37 U.S.C. § 204(a)(1) (2006). If a discharge is wrongful, the servicemember retains the right to

---

**12.** AR 150 (statement of Capt. Stricker, Reporter at the BOI hearing). In his affidavit however, Patrick Callahan writes that he sought approval from Capt. Sobczak's command to fly to Chicago but was denied permission. We cannot assess whether this statement contradicts the record cite, because it is not clear whether Capt. Callahan's request was properly directed. In any event, we have disallowed the affidavit.

**13.** At oral argument, Mr. Sobczak stated that he and Capt. Callahan spoke to people outside of Mr. Sobczak's command and acknowledged that the USMC permitted Capt. Callahan to call anyone at RS Chicago.

basic pay. *See Martinez v. United States,* 333 F.3d 1295, 1303 (Fed.Cir.2003). Because Mr. Sobczak alleges entitlement to the pay that he would have received absent unlawful discharge, we have jurisdiction. *Id.*

## II. Standard of Review

A decision by a branch of the military to discharge an officer comes before us with a limited standard of review. The former servicemember must establish that the military's decision to separate him or her was arbitrary, capricious, unsupported by substantial evidence, or contrary to law. *Id.* at 1314. Even if we disagree with the decision to discharge, we will not substitute our own judgment if reasonable minds could have come to the decision below. *See Joslyn v. United States,* 90 Fed.Cl. 161, 176 (2009). Our review is based on the administrative record assembled below.

## III. Mr. Sobczak's Claims

Mr. Sobczak argues that the USMC violated applicable regulations in three respects: first, it did not allow him to prepare an adequate defense during the NJP and BOI processes; second, because Gen. Tryon had yet to rule on Capt. Sobczak's PLOR appeal, Gen. Amos's decision to convene a BOI was premature; and, third, the USMC separated him after beginning pre-separation counseling too late.

### A. Mr. Sobczak's Ability to Prepare a Defense

#### i. NJP

Because Mr. Sobczak chose to be subject to NJP and the BOI that followed, his procedural rights were less extensive than they would have been if he had elected to be subject to a court martial, in which additional constitutional safeguards attach. *See, e.g., Middendorf v. Henry,* 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976). He did, however, have the right prior to the NJP hearing to inspect all physical or documentary evidence presented to the Commanding Gener-

al, and at the hearing, Capt. Sobczak could have "present[ed] witnesses, including those adverse to the [him], upon request if their statements will be relevant and they are reasonably available." Part V, Manual for Courts–Martial ("MCM"), ¶¶ 4(c)(1)(D), 4c(1)(F), V–3 (2008). Additionally, Mr. Sobczak also had the right to have counsel present at the hearing, although he chose not to. Part V, MCM, paras. 4c(1)(B), V–3.

Mr. Sobczak "does not deny that he was provided with a copy of the documents that the NJP officer would be considering during the hearing."[14] He argues, however, that Lt. Col. Marr's verbal "no contact" order improperly prevented him from contacting potential witnesses prior to the hearing. He also contends that Gen. Salinas denied him the opportunity to summon adverse witnesses—SSgts. Baker and Bodin—to the hearing.

Lt. Col. Marr's "no contact order" did not prevent Capt. Sobczak from exercising his rights before the hearing. Though the order's scope is unclear, as it was not written, there is nothing in the record to indicate that anyone prevented Capt. Sobczak from contacting potential witnesses in advance of the NJP hearing. Indeed, in an email to Capt. Sobczak, written over a month before the hearing, Lt. Col. Marr wrote, "Contact Maj. Crudo as a central POC for any thing or person you desire to talk to in RS Chicago."[15] This email suggests the "no contact order" was no longer in effect.

Mr. Sobczak contends that at the NJP hearing he requested that Gen. Salinas call SSgts. Baker and Bodin as witnesses. The record does not reflect this request. The reason, Mr. Sobczak suggests, lies in a faulty transcript. He alleges that the NJP hearing transcript is "not a complete and full record."[16] In particular, he claims that the portion of the transcript containing his witness request was removed. For proof, he suggests that Gen. Salinas's statement— "then I'm going to call the two staff sergeants as well"[17]—proves that he made the

request: "Apparently the transcript was not edited well enough as the command let one sentence slip...."[18] We reject the suggestion that the USMC intentionally altered the transcript. We presume government officials act in good faith. *Alaska Airlines, Inc. v. Johnson,* 8 F.3d 791, 795 (Fed.Cir.1993). "This presumption stands unless there is irrefragable proof to the contrary." *Id.* Without other proof, Mr. Sobczak's insinuations do not overcome the presumption.

Gen. Salinas had no obligation to call additional witnesses, but she gave Capt. Sobczak an opportunity to call any witnesses he wished. He declined to do so. The USMC did not violate his rights prior to or at the NJP hearing.

### ii. BOI

Mr. Sobczak argues that, during the BOI process and at the BOI itself, the USMC failed to follow its regulations. Characterized in our words, the regulations provided respondents with the following rights during the BOI process:[19]

1. Thirty days to prepare their cases and for good cause to petition for a continuance;
2. Right to counsel;
3. Opportunity to present matters on their own behalf;
4. Full access to and copies of relevant records;
5. The names of all witnesses before the BOI hearing;
6. The right to challenge any member for cause;
7. The right to request the appearance of any witness with pertinent testimony;
8. The right to submit any documents before or during the BOI;
9. The right to question any witness;
10. The right to give sworn or unsworn testimony;
11. The right to present argument to the Board;
12. Access to the transcript of the hearing along with the findings and recommendations of the Board;
13. The right to rebut the findings and recommendations of the Board;
14. The right to appear in person.

■ Mr. Sobczak argues that the USMC failed to honor three of these rights during the BOI process: his right to prepare a defense and, if necessary, ask for a continuance (1); his right to full access of records (4); and his right, at the BOI hearing, to request the appearance of witnesses (7). He points to the three requests he or his counsel made prior to the hearing date. On November 28, 2007, he requested copies of sixteen documents and access to thirty personnel for depositions. On December 11, he requested an indefinite continuance and repeated his request for documents and pre-hearing access to witnesses. Apparently, Capt. Callahan sent in a subsequent similar request, not in the record, because, on December 12, the BOI Recorder, Capt. Stricker, responded to Capt. Callahan. He told Capt. Callahan that the USMC would provide three of the sixteen documents or sets of documents but would not furnish the balance. Capt. Stricker said nothing concerning access to witnesses prior to the hearing. Although no continuance was granted, the initial hearing date had been moved to December 14.

As to the first issue, his right to sufficient time to prepare a defense, we note that the convening authority had the discretion to limit his request for an indefinite continuance: "Requests for continuance will be decided by the convening authority"[20] and "[a]ny requests for continuance which would delay the completion of the BOI hearing beyond a total of 60 calendar days from the date of notification to [Mr. Sobczak] must be approved by the Show Cause Authority." SECNAVINST 1920.6C, Encl. (8). The Board thus could place reasonable limits on any requests for a continuance.

Capt. Sobczak asked for a continuance so that Capt. Callahan could interview potential

---

**18.** Pl. Mot. 17.

**19.** AR 635–36.

**20.** AR 599.

witnesses.[21] Mr. Sobczak asserts in his briefing that the Board was willing to continue the case until after the holiday season, although we find no such reference in the record. He contends that this would have been an empty gesture, because the USMC was keeping him in San Diego in the interim, away from his family in Chicago.[22] There is no support for this speculation in the record, although, in any event, the USMC did not have to allow a continuance. It was within the agency's discretion to condition a continuance on Capt. Sobczak's remaining in San Diego. More importantly, Capt. Sobczak had much more than the minimum thirty days' notice to prepare his case. Gen. Amos notified him of the impending BOI on October 3, 2007, and it took place on December 14, 2007, over two months later.

Regarding his right to access relevant records, Capt. Sobczak indisputably had access to all the material on which the BOI based its decision. His sole complaint is that he was improperly denied access to thirteen of the sixteen documents he requested. The USMC denied these requests because the records were either irrelevant or because the records did not exist.[23] We see no error in this respect.

The denied requests included Lt. Col. Marr's notes from his interview with Capt. Sobczak. But Capt. Sobczak had access to the summary of Lt. Col. Marr's interview, the document Gen. Salinas relied on. Regulations entitled Capt. Sobczak to only those documents on which Gen. Salinas relied, here the summary of the interview, not contemporaneous notes.

The USMC also denied his request for the original tapes of the NJP hearing, but Mr. Sobczak already had the entire transcript. Also, SSgt. Baker's and SSgt. Bodin's own recruiting reports would appear to be irrelevant to the charges against Capt. Sobczak. Plaintiff offers no reason to question that conclusion. The same can be said of the Marine Corps Development Contact Team Training summaries for all contact team vis-

its, the results of all investigations conducted at RS Chicago from February 15, 2007, through December 12, 2007, access to his old laptop for "independent inspection," all reports detailing computer activity in RS Chicago, location reports for all six RS Chicago vehicles from June 1, 2006 until February 15, 2007, and vehicle assignment rosters from RS Chicago from June 1, 2006 to February 1, 2007. The USMC denied many of these requests as irrelevant or overbroad,[24] and we see no error in this respect. According to the USMC, the remainder of the documents requested did not exist and we have no basis to question that assertion.

Mr. Sobczak contends that he should have been given the right to depose thirty named individuals in advance of the hearing. We note that his right was to request witnesses to appear at the hearing. In that respect, he listed only the names of the individuals and did not address any of the procedural requirements for requesting witnesses. He did not explain what their expected testimony would be, why their testimony would be relevant, or why they had to testify in person. *See* SENAVINST 1920.6C, Encl. (8), § 9(e)(1)-(3). Nevertheless, the USMC allowed Mr. Sobczak's counsel to contact anyone he wished prior to the hearing.

As to the final issue, Mr. Sobczak contends that, at the BOI hearing, he was not allowed to call all the witnesses he wished to call. Capt. Sobczak and his counsel called six witnesses at the hearing. But plaintiff contends that he was not allowed to call SSgts. Baker and Bodin. When the BOI asked him if he had anything further to present, however, including witnesses, Mr. Sobczak said no. In sum, defendant did not violate Mr. Sobczak's procedural rights in connection with the BOI.

b. Gen Salinas's Forwarding of the NJP Report and the PLOR

Mr. Sobczak alleges that, in the interim between the NJP hearing and the BOI, Gen. Salinas's premature forwarding of the NJP report to Gen. Amos was inconsistent with the process outlined in The Marine

---

**21.** AR 149.

**22.** Pl. Mot. 21.

**23.** AR 644.

**24.** AR 644.

Corps Manual for Legal Administration. Specifically, he contends that the report of NJP should not have been forwarded to Gen. Amos, until:

> a. The appropriate authority [Gen. Tryon] has acted finally upon an appeal of NJP, or a reasonable period of time has elapsed after the imposition of NJP without an appeal having been taken. In this regard, an appeal shall be submitted within 5 days of imposition of punishment, or the right to appeal shall be waived in the absence of good cause shown .... and/or
>
> b. An appeal of a [PLOR] issued at NJP has been acted finally upon, or a reasonable period of time has elapsed after [Capt. Sobczak] has received the letter of admonition or reprimand without an appeal having been taken. In this regard, an appeal shall be submitted within 5 days of receipt of the letter, or the right to appeal shall be waived in the absence of good cause shown.

Marine Corps Manual for Legal Administration, Marine Corps Order ("MCO") P5800.16A, para. 4004. Mr. Sobczak reads the two subparagraphs above in the conjunctive. Hence, Gen. Salinas should have waited to forward the NJP to Gen. Amos until Gen. Tryon had acted on the appeal of the PLOR. In this case, he argues, Gen. Tryon had not yet acted on Capt. Sobczak's appeal of the PLOR, and therefore it was inappropriate to commence the BOI process under subparagraph b. above.

Gen. Salinas forwarded Capt. Sobczak's NJP report and the newly-issued PLOR to Gen. Tryon and Capt. Sobczak on August 17. Gen. Tryon sent the NJP report to Gen. Amos on September 7. Capt. Sobczak did not submit his PLOR appeal to Gen. Tryon until October 9, 2007. Consequently, plaintiff is correct that the NJP was forwarded prior to resolution of Capt. Sobczak's appeal of the PLOR.

This mistake harmed Capt. Sobczak, he alleges, because Gen. Amos decided to convene a BOI before Capt. Sobczak could appeal the PLOR. He contends that, when Gen. Tryon took up consideration of the PLOR in October, 2007, Gen. Amos had already decided to convene the BOI. Plaintiff argues that this gave the lower-ranked Gen. Tryon little choice but to summarily deny the PLOR appeal.

Defendant answers that plaintiff misreads the regulation. It argues that "and/or" effectively means the disjunctive, "or." Thus, Gen. Salinas did not err when she forwarded the report and the PLOR, because, by that time, Gen. Tryon had already acted on the NJP appeal.

We agree with defendant. The regulation uses the conjunction "and/or." Inclusion of the word "or" necessarily means that the NJP could move forward after either event. Though it is certainly confusing to use "or" and "and" at the same point, the only internally consistent way to read the language is that the NJP report could move forward *either* after the appeals of both the NJP and PLOR had been decided, or after *either* had occurred. It would be correct, in other words, to forward the report of NJP after both appeals had concluded, or either had. Therefore, Gen. Salinas did not err when she forwarded the report to Gen. Amos on August 17 because Gen. Tryon had acted on Capt. Sobczak's May 24 NJP appeal.

Defendant argues moreover, that even if there was error in moving forward prior to denial of the PLOR, it was error without injury. We agree. We note that the report of NJP (August 17) was forwarded after plaintiff's appeal of NJP had been denied (August 3). Also, an appeal of a PLOR is directed to whether the "the language in the letter is 'accurate and relevant to the offenses committed and the punishment imposed.'" Manual of the Judge Advocate General § 0114(g)(4). The appeal may not challenge the underlying finding of a violation. The NJP stands, in other words, even if the language in the PLOR changes. Capt. Sobczak would have remained guilty of Dereliction of Duty and Conduct Unbecoming an Officer and Gentleman. The place for Capt. Sobczak to have challenged the grounds for NJP was through the NJP appeal process. That had concluded prior to commencement of the BOI, as had the PLOR appeal itself. At any rate, the Board undertook its own review of the NJP report, which, in turn,

contained the transcript of the NJP hearing and the entirety of Lt. Col. Marr's investigation.[25]

Finally, plaintiff also argues that Gen. Tryon, in ruling on the PLOR appeal, improperly referred to it as Capt. Sobczak's "Second NJP Appeal." This was harmless error. However Gen. Tryon captioned his denial, he plainly was evaluating Capt. Sobczak's challenge to the PLOR. He found it "factually and procedurally accurate." [26]

### c. Final Separation

Mr. Sobczak argues that the USMC separated him without affording him his full pre-separation rights. In order to ease the transition to civilian life, all those leaving the USMC complete four mandatory transition assistance events: a pre-separation interview, a pre-separation counseling, a pre-separation counseling checklist, and a two-and-a-half day Transition Assistance Program ("TAP"). Marine Corps Separation and Retirement Manual ("MARCOSEPMAN") ¶ 1101(1)(a). The parties agree that the first three steps were completed, but that TAP was not, although we note that "failure to complete TAP will not preclude a member from being discharged or separated." MARCOSEPMAN ¶ 1101(1)(d)(1).

The United States Code provides the timetable for these transition assistance events:

(A) ... In the case of a separation other than a retirement, preseparation counseling shall commence as soon as possible during the 12–month period preceding the anticipated date. Except as provided in subparagraph (B), in no event shall preseparation counseling commence later than 90 days before the date of discharge or release.

(B) In the event that a retirement or other separation is unanticipated until there are 90 or fewer days before the anticipated retirement or separation date, preseparation counseling shall begin as soon as

possible within the remaining period of service.

10 U.S.C. § 1142(a)(3)(A)-(B) (2006).

■■■ At the conclusion of the December 14, 2007 BOI hearing, the Board decided to recommend separation. It was not until September 5, 2008, after everyone in Capt. Sobczak's chain of command had signed off, that the Assistant Secretary of the Navy for Manpower and Reserve Affairs accepted the recommendation to separate Capt. Sobczak. On September 16, 2008, Mr. Sobczak received separation counseling and his pre-separation checklist. At that time, his anticipated date of separation was December 15, 2008. The actual date of discharge, however, turned out to be September 30, 2008. Mr. Sobczak argues that, because the USMC anticipated his separation as early as December 14, 2007, there was time, under subparagraph A above, to complete the pre-separation process more than ninety days prior to separation.

We agree with defendant that the correct time to measure the days remaining prior to separation commenced with the September 5, 2008 decision of the Assistant Secretary. Prior to that time, the separation was merely a recommendation and could have been canceled.

Subparagraph A instructs that counseling should take place at least ninety days before the "date of discharge." The counseling took place on September 16, only two weeks prior to separation. At the time of the counseling, however, it was anticipated that the date of separation would be December 14. If the "date of discharge" in the second quoted sentence of subparagraph A also refers to the "anticipated" date of separation of the first sentence of that subparagraph, then the counseling was timely—it occurred ninety days prior to December 14. On the other hand, if the date of discharge in the second sentence is literally the actual date of discharge, then counseling occurred too late.[27]

---

25. Though the BOI theoretically would not have afforded Capt. Sobczak the opportunity to challenge the merits of the NJP, nevertheless the Board did not preclude him from presenting argument challenging the underlying accusations in an effort to avoid separation.

26. AR 480.

27. The agency would not be able to rely on the alternative in subparagraph B, because there were more than ninety days between September 5 and December 14, the then-anticipated date of

We believe that both sentences of subparagraph A should be interpreted as referring to the then-anticipated date of separation. The second sentence only makes sense as a limitation on the first, which means the same anticipated discharge date is contemplated. In addition, placing a hard limit on the minimum number of days presumes knowledge of an anticipated date. We conclude that all the mandatory pre-separation events were timely completed. We find no error in the USMC's pre-separation processing.

■ Plaintiff also contends that his final separation physical was not properly completed. The exam took place on September 26, 2007. The examining physician, Dr. Isaacman concluded that plaintiff was "physically qualified for separation."[28] Dr. Isaacman noted under "pertinent additional physical exam items," however, that he observed six conditions: shoulder impingement, hypertension, gerd, chronic abdominal pain, and fatty liver.

Plaintiff does not question Dr. Isaacman's conclusion that he was physically qualified for separation. He contends, however, that the six additional physical exam items should have lead to subsequent examinations prior to separation. He cites no authority for that proposition, and we agree with defendant that the agency was not required to take further action, once it was determined that he was physically qualified for separation.

We have considered plaintiff's other arguments and conclude that they do not warrant reversal.

### CONCLUSION

After reviewing the record, we conclude that the decision to separate Mr. Sobzcak was not arbitrary, capricious, or not in accordance with law. Accordingly, we deny plaintiff's cross-motion for judgment on the administrative record and grant defendant's motion. The clerk is directed to dismiss the case. No costs.

separation. We note, however, that when the agency changed the date of separation to December 14, counseling occurred "as soon as possible" prior to separation.

